DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Lawrence County Common Pleas Court, Juvenile Division, judgment that awarded Lawrence County Department of Job and Family Services (LCJFS) permanent custody of Monica Lilley, born December 17, 1996.
 {¶ 2} Appellant Georgiana Petty, the child's natural mother, raises the following assignments of error for review:
First Assignment of Error:
"The trial court's granting of permanent custody to the Lawrence County Department of job and family services was against the manifest weight of the evidence."
Second Assignment of Error:
"The trial court erred in finding that the Lawrence County Department of Job and Family Services used reasonable efforts to reunify the child with her mother."
 {¶ 3} Children services agencies have been involved in appellant's life since 1999. Monica previously had been removed from the home on two different occasions. Each time, she was placed in temporary custody, the appellant completed the case plans and Monica was returned to the appellant's custody.[1]
 {¶ 4} In early July of 2003, the appellant placed Monica in respite care and contacted LCJFS for help. Appellant stated that Monica, a six-year-old child, had been threatening to harm her with such items as a plastic baseball bat, a spatula, and a screwdriver. Appellant advised LCJFS caseworker Randy Thompson, "I can't handle [the child] because I'm afraid that [the child] will kill me."
 {¶ 5} On July 9, 2003, LCJFS filed a complaint and alleged that Monica was neglected and dependent and requested permanent custody. Appellant agreed to place Monica in LCJFS's temporary custody.
 {¶ 6} Appellant subsequently admitted the neglect and dependency allegations. On February 19 and 20, 2004, the court held a dispositional hearing. At the conclusion of the hearing, the appellant stated that she wished to voluntarily surrender custody of Monica. The court then set the matter for a March 2004 hearing.
 {¶ 7} Appellant, however, did not appear for the March 2004 voluntary surrender hearing. Her attorney appeared and stated that appellant wished to withdraw her voluntary surrender request. The trial court then scheduled the remainder of the dispositional hearing.
 {¶ 8} At the dispositional hearing, LCJFS presented evidence that Monica and the appellant have an unhealthy relationship and that appellant is unable to control Monica.
 {¶ 9} Monica's current foster mother testified that after Monica visits with the appellant, Monica is disruptive for days before she settles down. Monica has told the foster mother that she does not wish to return home: "She says that it's safe at our house which breaks my heart for her but she wants [her other two siblings] brought there and she wanted me to plead that to the Judge * * *."
 {¶ 10} The guardian ad litem reported that LCJFS did not provide the appellant with a case plan to attempt reunification because, according to LCJFS, it requested permanent custody from the beginning because of the appellant's "consistent pattern of inability" to care for Monica. The guardian ad litem "question[ed appellant]'s ability to parent [the child] properly, even if she is allowed another case plan. It appears that permanent surrender of the child to State custody is the only viable solution, unless [appellant] presents convincing evidence to the contrary at the dispositional hearing."
 {¶ 11} In an April 7, 2004 LCJFS "update report," the caseworker reported:
"The agency has been involved with [appellant] for many years. This agency recently closed a custody case concerning [the child] in March 2003. [Appellant] began calling the agency and talking with the supervisor, Terry Porter, approximately one to two weeks prior to 7-08-03. [Appellant] related that she was continuing to have problems with [the child] and could not control her. [Appellant] stated that [the child] was threatening her, and she was afraid that [the child] would hurt her or Franklin. Mr. Porter would ask if [appellant] wanted our involvement again and [appellant] would say she did not know. Mr. Porter scheduled a meeting between himself, [appellant] and Chester Petty [appellant's husband] for 7-08-03, to discuss the agency becoming involved again with the family and specifically [the child]. On 7-08-03 at 11:00 a.m., [appellant] and Chester came to the office to meet with Terry Porter. * * * * The discussion centered around the fact that if the agency became involved with a custody action of [the child] again, then the agency would request permanent custody. [Appellant] looked to Chester for an answer and Chester related that it would be [appellant]'s decision, but that he wanted what was best for [the child]. [Appellant] surrendered the six year old child to this agency stating that she could not handle her and was afraid the child will kill her. [The child] has threatened to kill [appellant] and Franklin, her baby brother, and has threatened her mother's life with a plastic ball bat, screw driver, hammer, car, wooden spoon, and spatula, and attempted to obtain a knife, according to [appellant].
[The child] has been in custody two times before. The family has completed case plans in the past and received counseling/parenting.
[The child]'s behaviors are worsening and the parents do not appear able to provide an appropriate level of supervision for [the child]'s or other kids' safety.
[The child] has had an extremely rough period of adjustment since the hearing. [The child] asked this worker if [appellant] told anyone why she didn't show up at the hearing. [The child] was calling Dawn Marie Mommy [the foster mother] before the hearing[;] now it depends upon what she wants. [The child] has had additional problems at school also, mostly involving lying. [The child] physically appears depressed to this worker. She is not as outgoing and vivacious as usual. She saw a psychiatrist last week and was prescribed Adderall for hyperactivity, which has calmed her and allowed greater concentration in school. The psychiatrist also prescribed Paxil, an antidepressant. The foster parents were concerned about giving it to her, but after consulting the side effects and the agency, it was decided, as she is in a stable, fairly well controlled environment, the possible benefits outweigh the negatives. * * * *
There have been no visitations between [the child] and [appellant] since February 17, 2004. [Appellant] agreed at the permanency hearing on February 19 and 20, to discontinue further visits due to [the child]'s behaviors following visitations. [The child] has asked about [appellant], if she has called about her or if she showed up at the court hearing.
[Appellant] has not asked about [the child] during any conversation since the hearing.
[Appellant] has phoned this worker several times to request transportation to medical appointments and has not asked about [the child] one time. [Appellant] did report to this worker that the reason she did not show at the permanent surrender hearing was because she changed her mind. [Appellant] stated it was not a transportation issue — she knew she could get a ride from this worker, but that she was not signing any papers. She then stated that her attorney told her not to show at the hearing. [Appellant] stated that she wanted this worker to find out from her before anyone else reported, that she is letting her sister, Christienne Moore, babysit her kids two times a week. [Appellant] stated that they are getting along right now, and she is trying to get her kids `used to it' at Christienne's house. [Appellant] stated that the kids are not used to it right now, because the kids stay up all night when they return to their home and try to put them to bed."
 {¶ 12} On April 30, 2004, the guardian ad litem filed a supplemental report and repeated his recommendation that the court grant LCJFS permanent custody. In it, he related the following:
"Much testimony was given regarding the events of early July 2003. The agency workers testified that [appellant] came to the agency on July 8, 2003 asking to permanently surrender [the child] because she could no longer handle her. [Appellant] testified that she only asked for help, and at no time asked to surrender [the child]. I stated in my earlier report that I felt that the agency workers swayed the conversation from `help' to `surrender.' However, since that time, I have had cause to reconsider my opinion.
Following the hearing of February 20, 2004, appellant] spoke with me, along with * * * others, about voluntarily surrendering [the child]. At that time, she broke down into tears and stated that she could not handle [the child] and that it would be best if she surrendered her. Another court date was scheduled for the purpose of completing the surrender, but [appellant] did not attend that hearing. Apparently she had changed her mind in the interim. That incident was similar to the July 8, 2003 incident as reported by the agency workers, and causes me to believe the agency workers' version of those events.
Despite two prior Children Services cases involving [the child], and two case plans designed to remedy the problems, [appellant] has continued to prove unable to properly care for [the child]. Therefore, it is my opinion that she will never [be] able to properly care for [the child], even if she is provided another case plan. Therefore, I believe that it will be in [the child]'s best interest for the Court to grant the agency's permanent custody motion."
 {¶ 13} On May 27, 2004, the trial court granted LCJFS permanent custody. The court found that Monica cannot be placed with either parent within a reasonable period of time and should not be placed with either parent and that permanent custody would serve Monica's best interests. The court noted that Monica had been in-and-out of LCJFS's custody for several years and determined that reunification would not serve Monica's best interest. The court found that "reasonable efforts for reunification under this current case" were "not necessary." The court specifically noted:
 {¶ 14} "The mother has completed two prior case plans with the agency which focused upon the same issues that formed the basis for the current finding of dependency and neglect. The mother though having completed the prior case plans continues to be unable to provide a stable environment, the supervision necessary to protect the child's safety and to provide for the child's well being. There have been other involvement's [sic] of the agency regarding this child. The child is in need of a legally secure permanent placement and that kind of placement cannot be achieved without a grant of permanent custody to the agency."
 {¶ 15} Appellant filed a timely notice of appeal.
 {¶ 16} Because the appellant's first and second assignments of error both concern the trial court's decision to grant LCJFS permanent custody, we address them together.
 {¶ 17} In her first assignment of error, the appellant argues that the court's judgment is against the manifest weight of the evidence. Specifically, she contends that none of the circumstances in R.C. 2151.414(B)(1) exist to justify a finding that permanent custody would be in Monica's best interest. Appellant asserts that no evidence exists to show that: (1) Monica has been in LCJFS's custody for twelve or more months of a twenty-four month period, under R.C. 2151.414(B)(1)(d); (2) she abandoned Monica under R.C. 2151.414(B)(1)(b); or (3) Monica cannot be placed with either parent within a reasonable time or should not be placed with either parent, under R.C.2151.414(B)(1)(a). She particularly challenges LCJFS's failure to provide her with a case plan to provide for reunification. Appellant disputes LCJFS's claim that a case plan would be futile. She further contends that the trial court's finding that Monica's best interest would be served by awarding LCJFS permanent custody is against the manifest weight of the evidence.
 {¶ 18} In her second assignment of error, the appellant argues that the agency did not use reasonable efforts because it failed to provide her with a case plan for reunification.
 {¶ 19} A parent has a "fundamental liberty interest" in the care, custody, and management of his or her child and an "essential" and "basic civil right" to raise his or her children.Santosky v. Kramer (1982), 455 U.S. 745, 753, 102 S.Ct. 1388,71 L.Ed.2d 599; In re Murray (1990), 52 Ohio St.3d 155, 156,556 N.E.2d 1169. The parent's rights, however, are not absolute. Rather, "`it is plain that the natural rights of a parent * * * are always subject to the ultimate welfare of the child, which is the pole star or controlling principle to be observed.'" In reCunningham (1979), 59 Ohio St.2d 100, 106, 391 N.E.2d 1034
(quoting In re R.J.C. (Fla.App. 1974), 300 So.2d 54, 58). Thus, the state may terminate parental rights when the child's best interest demands such termination.
 {¶ 20} A public children services agency may file a complaint requesting permanent custody of the child. See In re Nibert,
Gallia App. No. 03CA19, 2004-Ohio-429, at ¶ 13. "Procedures upon a complaint for permanent custody * * * are generally governed by R.C. 2151.353." In re I.M., Cuyahoga App. Nos. 82669 and 82695, 2003-Ohio-7069, at ¶ 10; In re Swisher, Franklin App. Nos. 02AP-1408 and 02AP-1409, 2003-Ohio-5446, at ¶ 27. When considering a request for permanent custody, a trial court should consider the underlying principles of R.C. Chapter 2151:
To provide for the care, protection, and mental and physical development of children * * *;
* * *
To achieve the foregoing purpose, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety.
 {¶ 21} R.C. 2151.01.
 {¶ 22} We note that clear and convincing evidence must exist to support a permanent custody award. The Ohio Supreme Court has defined "clear and convincing evidence" as follows:
"The measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal."
 {¶ 23} In re Estate of Haynes (1986), 25 Ohio St.3d 101,103-04, 495 N.E.2d 23; see, also, State v. Schiebel (1990),55 Ohio St.3d 71, 74, 564 N.E.2d 54. In reviewing whether the lower court's decision was based upon clear and convincing evidence, "a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." Schiebel, 55 Ohio St.3d at 74. If the lower court's judgment is "supported by some competent, credible evidence going to all the essential elements of the case," a reviewing court may not reverse that judgment. Id.
 {¶ 24} Moreover, "an appellate court should not substitute its judgment for that of the trial court when there exists competent and credible evidence supporting the findings of fact and conclusion of law." Id. Issues relating to the credibility of witnesses and the weight to be given the evidence are primarily for the trier of fact. As the court explained in Seasons CoalCo. v. Cleveland (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273:
 {¶ 25} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
 {¶ 26} R.C. 2151.353(A)(4) permits a trial court to grant permanent custody of a child to a children services agency if the court determines that: (1) under R.C. 2151.414(E), the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with either parent; and (2) under R.C. 2151.414(D), the child's best interest would be served by the award of permanent custody.
 {¶ 27} R.C. 2151.414(E) sets forth the factors a trial court must consider in determining whether a child cannot or should not be placed with either parent within a reasonable time. If the court finds, by clear and convincing evidence, the existence of any one of the following factors, "the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent":
Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
Chronic mental illness, chronic emotional illness, mental retardation, physical disability, or chemical dependency of the parent that is so severe that it makes the parent unable to provide an adequate permanent home for the child at the present time and, as anticipated, within one year after the court holds the hearing pursuant to division (A) of this section or for the purposes of division (A)(4) of section 2151.353 of the Revised Code;
The parent committed any abuse as described in section 2151.031
of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;
The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
The parent is incarcerated for an offense committed against the child or a sibling of the child;
The parent has been convicted of or pleaded guilty to [certain criminal offenses] and the child or a sibling of the child was a victim of the offense or the parent has been convicted of or pleaded guilty to an offense under section 2903.04 of the Revised Code, a sibling of the child was the victim of the offense, and the parent who committed the offense poses an ongoing danger to the child or a sibling of the child.
The parent has been convicted of or pleaded guilty to [certain criminal offenses];
The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.
The parent has abandoned the child.
The parent has had parental rights involuntarily terminated pursuant to this section or section 2151.353 or 2151.415 of the Revised Code with respect to a sibling of the child.
The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing.
The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child.
The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
The parent has committed abuse as described in section 2151.031
of the Revised Code against the child or caused or allowed the child to suffer neglect as described in section 2151.03 of the Revised Code, and the court determines that the seriousness, nature, or likelihood of recurrence of the abuse or neglect makes the child's placement with the child's parent a threat to the child's safety.
Any other factor the court considers relevant.
 {¶ 28} A trial court may base its decision that a child cannot or should not be placed with either parent within a reasonable time upon the existence of any one of the above factors. The existence of one factor alone will support a finding that the child cannot be placed with either parent within a reasonable time. See In re William S. (1996), 75 Ohio St.3d 95,661 N.E.2d 738; In re Hurlow (Sept. 21, 1998), Gallia App. No. 98 CA 6; In re Butcher (Apr. 10, 1991), Athens App. No. 1470.
 {¶ 29} R.C. 2151.414(D) requires the trial court to consider specific factors in determining whether the child's best interests would be served by granting the motion for permanent custody. The factors include: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency; and (5) whether any factors listed under R.C. 2151.414(E)(7) to (11) apply.
 {¶ 30} After our review of the case at bar, we believe that ample competent and credible evidence supports the trial court's decision to award permanent custody of Monica to LCJFS. First, we note that the record contains substantial evidence to support the trial court's finding that Monica cannot or should not be placed with either parent within a reasonable time. It found that under R.C. 2151.414(E)(4), the appellant has demonstrated an unwillingness to provide an adequate permanent home for Monica. Appellant requested to surrender Monica, then changed her mind. Monica had twice before been removed from the appellant's custody. Appellant has stated that she cannot "handle" Monica. Because at least one of the R.C. 2151.414(E) factors applies, the trial court's finding that Monica cannot or should not be placed with either parent within a reasonable time is not against the manifest weight of the evidence, and we need not address appellant's arguments concerning R.C. 2151.414(B)(1)(b) and (d).
 {¶ 31} Next, we note that the record contains substantial evidence to support the trial court's finding that granting LCJFS permanent custody serves Monica's best interests. First, Monica's interaction and interrelationships support the trial court's best interest finding. Monica has expressed to her teachers and foster mother that she feels unloved at home. Appellant has stated that she is afraid that Monica will kill her or one of the younger children. Appellant has not been able to consistently control Monica's behaviors. Monica's foster mother stated that following visits with the appellant, Monica misbehaved and would not settle down for several days. Monica's foster mother related that the child still has some problems, but that they are manageable. Second, regarding Monica's wishes, we note that Monica did not directly express her desires to the court, but the guardian ad litem recommended that the trial court award LCJFS permanent custody. Additionally, Monica's foster mother testified that the child stated that she does not wish to return to appellant. Third, with respect to Monica's custodial history, evidence exists that she has been removed from appellant's custody on two separate prior occasions and placed in LCJFS's temporary custody. Monica has not been in a stable environment throughout her young years. Fourth, Monica needs and deserves a consistently stable environment, which appellant has been unable or unwilling to provide.
 {¶ 32} While appellant wishes to have Monica returned to her and has expressed her love for the child, appellant's past actions do not bode well for showing that she will provide Monica with a stable environment. The present case is the third time in Monica's six-years in which the appellant has demonstrated her inability to properly care for Monica. Monica deserves more than to be bounced in and out of LCJFS's or any other children services agency's custody any time the appellant decides that she cannot "handle" the child.
 {¶ 33} Furthermore, courts have recognized that:
 {¶ 34} "`* * * [A] child should not have to endure the inevitable to its great detriment and harm in order to give the * * * [parent] an opportunity to prove her suitability. To anticipate the future, however, is at most, a difficult basis for a judicial determination. The child's present condition and environment is the subject for decision not the expected or anticipated behavior of unsuitability or unfitness of the * * * [parent]. * * * The law does not require the court to experiment with the child's welfare to see if he will suffer great detriment or harm.'"
 {¶ 35} In re Bishop (1987), 36 Ohio App.3d 123, 126,521 N.E.2d 838 (quoting In re East (1972), 32 Ohio Misc. 65, 69,288 N.E.2d 343, 346).
 {¶ 36} Appellant further argues that the trial court erred by concluding that LCJFS used reasonable efforts. She asserts that it did not use reasonable efforts because it did not implement a case plan to reunify Monica with her, but instead sought permanent custody of Monica.
 {¶ 37} Children services agencies are statutorily required to develop case plans for children in their custody and the case plans should include objectives for each of the child's parents. See R.C. 2151.412. R.C. 2151.353(H) prohibits a trial court from removing a child from the child's home "unless the court complies with [R.C. 2151.419] and includes in the dispositional order the findings of fact required by that section." Thus, upon a complaint requesting permanent custody, a trial court must determine whether the agency made reasonable efforts to return the child to the parents before it authorizes the removal of the child. See id.; In re Wright, Ross App. No. 01CA2627, 2002-Ohio-410.
 {¶ 38} "In determining whether reasonable efforts were made, the child's health and safety shall be paramount." R.C.2151.419(A)(1). R.C. 2151.419(A)(2) further provides that if any of the following factors apply, "the court shall make a determination that the agency is not required to make reasonable efforts to prevent the removal of the child from the child's home, eliminate the continued removal of the child from the child's home, and return the child to the child's home":
The parent from whom the child was removed has been convicted of or pleaded guilty to [certain criminal offenses];
The parent from whom the child was removed has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food. If the parent has withheld medical treatment in order to treat the physical or mental illness or defect of the child by spiritual means through prayer alone, in accordance with the tenets of a recognized religious body, the court or agency shall comply with the requirements of division (A)(1) of this section.
The parent from whom the child was removed has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring such treatment of the parent.
The parent from whom the child was removed has abandoned the child.
The parent from whom the child was removed has had parental rights involuntarily terminated pursuant to section 2151.353,2151.414, or 2151.415 of the Revised Code with respect to a sibling of the child.
 {¶ 39} In addition to the statutory reasons why reasonable efforts may be unnecessary, courts have recognized an implied exception when case planning efforts would be futile. See, e.g.,In re Harmon (Sept. 25, 2000), Scioto App. No. 00CA2693; In reCrosten (Mar. 21, 1996), Athens App. No. 95CA1692. "Trial courts should be cautious in finding that reasonable efforts would have been futile where an agency has chosen to ignore the natural parent." In re Efaw (Apr. 21, 1998), Athens App. No. 97CA49; see, also, In re T.K., Wayne App. No. 03CA6, 2003-Ohio-2634. When "an agency has chosen to ignore a natural parent, a finding of futility should be made only after careful consideration of how the agency's inaction contributes to the appearance of futility." In re Norris (Dec. 12, 2000), Athens App. Nos. 00CA38 and 00CA42.
 {¶ 40} In the case sub judice, the court's finding that reasonable efforts at reunification would be futile is not against the manifest weight of the evidence. The court specifically found that:
 {¶ 41} "The mother has completed two prior case plans with the agency with focused upon the same issues that formed the basis for the current finding of dependency and neglect. The mother though having completed the prior case plans continues to be unable to provide a stable environment, the supervision necessary to protect the child's safety and to provide for the child's well being. There have been other involvement's [sic] of the agency regarding this child."
 {¶ 42} Thus, based upon appellant's numerous and lengthy past involvement with children services, which demonstrates her inability to properly care for the six-year-old child, the trial court could properly conclude that further attempts at reunification are simply futile. Consequently, we believe that the trial court's judgment awarding LCJFS permanent custody is not against the manifest weight of the evidence.
 {¶ 43} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's two assignments of error and affirm the trial court's judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant the costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Lawrence County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Kline, P.J.: Concurs in Judgment Only.
Harsha, J.: Concurs in Judgment Opinion.
[1] The record does not contain any of the records from the prior cases, but no one disputes the essential facts.