[Cite as *In re M.R.*, 2011-Ohio-6528.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY

IN THE MATTER OF:

    M. R.                                **CASE NO. 4-11-12**

ALLEGED DEPENDENT CHILD,

    [K. P. - APPELLANT/MOTHER],         **O P I N I O N**
    [D. R. - APPELLANT/FATHER].

Appeal from Defiance County Common Pleas Court
Trial Court No. 30252

**Judgment Affirmed**

**Date of Decision: December 19, 2011**

APPEARANCES:

    *Timothy C. Holtsberry* for Appellant Mother

    *Michael C. Wahl* for Appellant Father

    *Morris J. Murray and Russell R. Herman* for Appellee

Case No. 4-11-12

**ROGERS, P.J.**

{¶1} Mother-Appellant, Kimberly P. ("Kimberly" or "Mother"), and Father-Appellant, David R. ("David" or "Father"), appeal the judgment of the Court of Common Pleas of Defiance County, Juvenile Division, adjudicating their daughter, M.R., dependent and granting temporary custody to the Defiance County Department of Job and Family Services ("the Agency"). On appeal, the Mother and Father contend that the trial court erred by adjudicating M.R. dependent, and that the trial court erred by failing to dismiss the complaint due to its untimely filing. Based upon the following, we affirm the judgment of the trial court.

{¶2} A review of the record shows that on August 17, 2010, the Ohio Reformatory for Women ("ORW") sent a fax to the Agency reporting that prison inmate, Kimberly, had applied to participate in the ABC Nursery program as she was pregnant and her expected due date was October 20, 2010.[1] State's Exhibit 1. The fax requested the Agency to report to the ORW whether Kimberly had any prior involvement with the Agency regarding abuse or neglect on her behalf. Id. The ORW also requested the Agency to complete home studies of alternative placements in the event Kimberly did not qualify for the ABC Nursery Program. Id. Included in the fax was a list of these alternative placements. State's Exhibit 3. The alternative placements listed were David and Jane Stull, Kimberly's

---

[1] According to the State's brief, the ABC Nursery program allows the incarcerated new mother to keep her baby with her while serving her prison sentence.

mother. Id. On September 13, 2010, the Agency sent a letter to the ORW explaining that Kimberly had no history in Defiance County of abusing or neglecting other children and reported that she may benefit from the ABC Program. State's Exhibit 4. The ORW admitted Kimberly into the program (State's Exhibit 5), but on September 17, 2010, Kimberly withdrew her application in order to join the Intensive Prison Program.[2] State's Exhibit 7. The ORW then advised the Agency that Mother listed the alternative placements as David and Deb Ratliff ("Deb"), David's mother. State's Exhibit 5.

{¶3} On October 13, 2010, Kimberly gave birth to M.R. On the same day, the Agency filed an emergency ex parte order requesting emergency temporary custody of M.R., which the trial court granted. After a hearing on the matter, the trial court ordered that M.R. be placed in the emergency custody of the Agency. On October 20, 2010, the Agency filed a complaint, alleging that M.R. is a dependent child as defined in R.C. 2151.04(A)(C) and seeking that M.R. be placed in the temporary custody of the Agency or a suitable relative. The Agency alleged that the child's biological father had not yet been established, and the child's mother was incarcerated. The trial court held the adjudicatory hearing on May 24, 2011 during which the following testimony was adduced.

---

[2] The Intensive Prison Program allows the inmate to be released from prison early upon successful completion of the program. An inmate cannot be enrolled in both the ABC Program and the Intensive Prison Program.

{¶4} Nikki Delaney ("Nikki"), an intake employee for the Agency testified that the Agency received a fax inquiring as to Kimberly's eligibility for the ABC Program. The fax included a list of alternative placements in case Kimberly did not qualify. Nikki testified that she checked into Kimberly and sent a letter to ORW reporting that Kimberly was a good candidate for the program. Nikki testified that on September 17, 2010, the Agency received a fax reporting that the Mother had withdrawn from the ABC Program. The fax included a second list of alternatives placements, listing Deb and David, and reporting that Kimberly was due to deliver on October 20, 2010. Nikki testified that she could not remember what action she or the Agency took after receiving the September 17, 2010 fax. She stated that when M.R. was born, she contacted Jane Stull, who refused to be a placement. Nikki continued to testify that previously she had looked into David, but found that he was being investigated for allegations of rape of a teenage girl. Nikki testified that due to a misunderstanding of the incarcerated mother rule, neither she nor her supervisor looked into David or Deb as placements as paternity had not yet been established. Nikki explained that the incarcerated mother rule allows non-relatives to be alternative placements for a child when the child is born to an incarcerated mother, whereas in cases where the mother is not incarcerated, an alternative placement must be a blood-relative. She also explained that David was not listed on the birth certificate; that he and the Mother were not married;

and that no other family members of the Mother were listed as potential placements. Since the Agency believed there were no placements for M.R., it filed for an ex parte order. Nikki testified that several weeks after M.R.'s birth, genetic test results established David's paternity. Lastly, Nikki testified that had Deb been contacted and had she been an appropriate placement, there would have been no need to file a dependency action.

{¶5} Deb testified that she is a foster parent and the mother of David by adoption. Deb stated that she was aware that Kimberly was in prison and was pregnant. She also testified that previously she had told David and Kimberly that she would take custody of the child. However, Deb testified that she wrote two letters to Kimberly, one in September and one in October, 2010, telling Kimberly she would not take the child due to problems she was having with David and Kimberly. Photocopies of the letters, reflecting such testimony, were admitted into evidence. Deb testified that she is now willing to take M.R. and has told the Agency the same, but that prior to M.R.'s birth, she was not sure if she would have taken M.R.

{¶6} Neither the Mother nor the Father presented evidence.

{¶7} The judgment entry filed May 31, 2011 adjudicated M.R. a dependent child on October 13, 2010, as the Mother was incarcerated, and at the time of birth the child's father was putative. The judgment entry also included, "[t]he [c]ourt

finds that even though the Agency . . . did not comply strictly with the provisions of the Ohio Administrative Code regarding placement services for infants of incarcerated mothers at the time of [M.R.]'s birth, the Agency's failure to comply did not create the dependent status of [M.R.]." Judgment Entry, Docket No. 39.

{¶8} On June 28, 2011, a dispositional hearing was held. Through the judgment entry filed July 8, 2011, the trial court stated that the parties agreed that it was in the best interests of M.R. to be placed in the temporary custody of the Agency, and accordingly, ordered temporary custody to remain with the Agency. Docket No. 42. It is from this judgment that the parties filed their notices of appeal, asserting the following assignments of error for review.[3]

### Assignments of Error No. I

**THE TRIAL COURT ERRED AS A MATTER OF LAW IN FINDING THE CHILD DEPENDENT, WHEN AGENCY DID NOT FOLLOW THE REQUIREMENTS IN OHIO REVISED CODE 2151.419 AND OHIO ADMINISTRATIVE CODE 5101:2-42-60[.]**

### Assignments of Error No. II

**TRIAL COURT ERRED BY NOT FOLLOWING THE REQUIRMENTS R.C. 2151.31 AND R.C. 2151.27[.]**

---

[3] Both Mother and Father filed a notice of appeal and an appellate brief. As the briefs are practically identical, we will address both simultaneously.

*Assignments of Error No. I*

**{¶9}** In the first assignments of error, the Appellants challenge the adjudication of dependency arguing that the Agency did not meet its burden in establishing that it used reasonable efforts to prevent the removal of the child as required by R.C. 2151.419(A)(1); that the Agency did not use reasonable efforts as it failed to comply with Ohio Administrative Code 5101:2-42-60 which required the Agency to conduct a home assessment of the proposed caregivers; and, that the trial court erred by failing to address the Agency's reasonable efforts as required by R.C. 2151.419(B)(1). The Appellants urge this Court to find that the above constitutes reversible error.

**{¶10}** The appropriate standard of review for cases involving an adjudication of dependency is clear and convincing evidence. R.C. 2151.35(A)(1); Juv.R. 29(E)(4); *In re Myers*, 3d Dist. No. 13-06-48, 2007-Ohio-1631, ¶11. "[C]lear and convincing evidence is that measure of degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established." *Cross v. Ledford* (1954), 161 Ohio St. 469, 477, 53 O.O. 361, 120 N.E.2d 118, citing *Merrick v. Ditzler* (1915), 91 Ohio St. 256, 267, 110 N.E. 493.

**{¶11}** Revised Code 2151.419(A)(1) provides, in pertinent part, that:

**[A]t any hearing held pursuant to section 2151.28 . . . of the Revised Code at which the court removes a child from the**

**child's home or continues the removal of a child from the child's home, the court shall determine whether the public children services agency or private child placing agency that filed the complaint in the case, removed the child from home, has custody of the child, or will be given custody of the child has made reasonable efforts to prevent the removal of the child from the child's home, to eliminate the continued removal of the child from the child's home, or to make it possible for the child to return safely home. The agency shall have the burden of proving that it has made those reasonable efforts.**

{¶12} R.C. 2151.419(B)(1) provides that:

**A court that is required to make a determination as described in division (A)(1) or (2) of this section shall issue written findings of fact setting forth the reasons supporting its determination. If the court makes a written determination under division (A)(1) of this section, it shall briefly describe in the findings of fact the relevant services provided by the agency to the family of the child, and why those services did not prevent the removal of the child from the child's home or enable the child to return safely home.**

{¶13} Ohio Administrative Code 5101:2-46-60(B)(1) provides that:

**Upon notification by the correctional facility that postnatal services will be needed, the [public children services agency] in the county in which the woman was a resident at the time of incarceration . . . shall . . . [c]onduct a home assessment of the proposed relative or non-relative caregiver recommended by the incarcerated woman . . . and provide a copy of the findings and recommendation to the correctional facility.**

{¶14} Initially, we note that Appellants' assignments of error challenge solely the dependency adjudication which occurred one month before the temporary custody disposition. The adjudication hearing and the resulting

judgment entry focused exclusively on the events prior to and on the date of M.R.'s birth. Accordingly our analysis is similarly focused.

{¶15} In the case sub judice, we question the propriety of applying R.C. 2151.419(A)(1). The statutory language of particular concern is ". . . reasonable efforts to prevent the *removal* of the child *from the child's home,* to eliminate the continued removal of the child from the child's home, or to make it possible for the child to *return safely home*." R.C. 2151.419 (Emphasis added). Our concern lies with the meaning of the terms "removal" and "home," neither of which are defined in Revised Code Chapter 2151. In the present case, the Mother gave birth while incarcerated and refused to participate in the only program that would allow her to keep the child; the Father was not a suitable placement due to the ongoing investigation regarding allegations of rape; the maternal grandmother refused to take the child, and the evidence presented at the hearing shows that the paternal grandmother would have refused to take M.R. as well. Therefore, the Agency did not actively seek to remove the child from the Mother, but rather, the child was born into an environment in which it could not remain, leaving the Agency no choice but to take action. Further, we are hesitant to deem a hospital or prison a home. Although the statute lacks a definition of home, "out-of-home care" is defined as, inter alia, detention facilities, shelter facilities, institutions, state institutions, and hospitals. R.C. 2151.011(A)(29). Because M.R. was born in

out-of-home care and could not have remained with either parent, it is unlikely that M.R., if in fact removed, was removed from a home.

{¶16} Nonetheless, if we were to assume that R.C. 2151.419 did apply to this case at the time of the adjudication, we find that the Agency's efforts were reasonable given the circumstances. A reasonable efforts analysis does not delve into a discussion of whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute. *In re R.C.*, 3d Dist. Nos. 16-09-11, 16-09-12, 16-09-13, 2010-Ohio-3800, ¶16, citing *In re Leveck*, 3d Dist. Nos. 5-02-52, 5-02-53, 5-02-54, 2003-Ohio-1269, ¶10. Reasonable efforts are "the state's efforts to resolve the threat to the child before removing the child or to permit the child to return home after the threat is removed . . ." *In re C.F.*, 113 Ohio St.3d 73, 78, 2007-Ohio-1104, 862 N.E.2d 816.

{¶17} The efforts undertaken by the Agency were as follows: the Agency approved the Mother for the ABC Program after looking into her prior involvement with the Agency, and reported the same to the ORW; the Agency looked into the Father and discovered that he was under investigation for allegations of rape and was therefore not a suitable placement; and, the Agency contacted the maternal grandmother who refused to take M.R. The Agency however, did not conduct a home assessment of or contact the paternal grandmother due to a misunderstanding of the Administrative Code. Contrary to

the Appellants' contention, this failure does not render the Agency's efforts unreasonable as the evidence at trial established that the paternal grandmother would not have taken M.R.[4]  Accordingly, the Agency did establish that it used reasonable efforts.  Moreover, any additional effort taken by the Agency would have been futile as it could not have prevented the separation of M.R. and her parents at the time of M.R.'s birth.  *In the Matter of Chestnut Children*, 5th Dist. No. 05CA39, 2006-Ohio-684, ¶19 (Children Services Board's failure to make reasonable efforts was harmless because attempt would have been futile given mother's addiction issues, mental illness, and incarceration), citing *In the Matter of Lilley,* 4th Dist. No. 04CA22, 2004-Ohio-6156, *In the Matter of Crosten* (Mar. 21, 1996), 4th Dist. No. 95CA1692; *Elmer v. Lucas County Children Services Board* (1987), 36 Ohio App.3d 241, 244, 523 N.E.2d 540.

{¶18} Further, assuming that R.C. 2151.419 applied at the time in issue, the trial court did not fail to address the Agency's reasonable efforts in its judgment entry adjudicating M.R. dependent, as the Appellants contend.  The trial court issued thirteen findings of fact, roughly half of which speak to the Agency's efforts. It then found that, "the Agency's failure [to comply with the Ohio Administrative Code] did not create the dependent status of [M.R.]"  Judgment

---

[4] While we do not condone the Agency's negligence in misunderstanding and misapplying OAC 2101:2-42-60, a fact which it does not dispute, we find that compliance would not have changed the result in this particular case.

Entry, Docket No. 39. Accordingly, this argument is without merit as the trial court satisfied the statutory provisions in R.C. 2151.419(B)(1).

{¶19} As the trial court's judgment of dependency is supported by clear and convincing evidence, we affirm its judgment. Accordingly, we overrule the Appellants' first assignments of error.

*Assignments of Error No. II*

{¶20} The Appellants contend that the trial court erred by failing to dismiss the complaint as it was untimely filed according to R.C. 2151.27(A)(1) and R.C. 2151.31(D) or (E). As these statutes mandate that a complaint must be filed before the end of the next business day after the child is taken into custody, and the Agency filed a complaint ten days after M.R. was taken into custody, the appellants argue that the trial court committed plain error in failing to dismiss the complaint.

{¶21} "'In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.'" *Ordean v. Ordean*, 3d Dist. No. 17-06-15, 2007-Ohio-3979, ¶14, quoting

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 1997-Ohio-401, 679 N.E.2d 1099, syllabus.

{¶22} When a trial court issues an ex parte order of emergency custody of an alleged dependent child, a complaint must be filed "with respect to the child before the end of the next day after the day on which the child was taken into custody." R.C. 2151.27(A)(1); See R.C. 2151.31(D) (directing that the complaint must be filed "before the end of the next business day after the day on which the child is taken into custody").

{¶23} Juv.R. 22(D) requires that objections based on defects in the institution of the proceeding or on defects in the complaint must be heard before the adjudicatory hearing. Juv.R. 22(D)(1); Juv.R. 22(D)(2). These prehearing objections can be made in the form of a motion and shall be filed by the earlier of seven days prior to the hearing or ten days after the appearance of counsel. Juv.R. 22(E). Failure to make a timely objection constitutes waiver. *In re Dukes* (1991), 81 Ohio App. 3d 145, 150, 610 N.E. 2d 513; *In the Matter of Simon* (Oct. 15, 1980), 2d Dist. No. CA 1011, citing *In re Hunt* (1976), 46 Ohio St. 2d 378, 348 N.E.2d 727, *In re Fudge* (1997), 59 Ohio App.2d 129, 392 N.E.2d 1262.

{¶24} In the instant case, the hearing on the ex parte motion for temporary custody was held on October 14, 2010, and temporary custody was granted. Foster parents took M.R. home from the hospital that same day. The complaint

was filed on October 20, 2010. According to Revised Code Chapter 2151, the complaint should have been filed before the end of the day on October 15, 2010. As the State did not file the complaint until October 20, 2010, the complaint was late and thus in dereliction of the statute. The Appellants, however, never filed objections, and instead chose to proceed to the hearing. As neither party raised their objections below, they are waived.

{¶25} The Appellants urge this Court to undertake a plain error analysis, arguing that it was plain error for the trial court not to dismiss the complaint as untimely. Despite the late filing, the adjudicatory hearing was not held until seven months later, at the behest of Mother as she was then out of prison. This Court is unable to arrive at the conclusion urged by Appellants, as the untimely filing in no way seriously affected the basic fairness, integrity, or public reputation of the judicial process or challenged the legitimacy of the underlying judicial process itself.

{¶26} Accordingly, we overrule the Mother's and Father's second assignments of error.

{¶27} Having found no error prejudicial to the Appellants' herein, in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW and PRESTON, J.J., concur.**