[Cite as *In re G.L.L.*, 2015-Ohio-3539.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

IN THE MATTER OF:             :        **O P I N I O N**
G.L.L., DELINQUENT CHILD
                              :

                              :        **CASE NOS.  2014-G-3189
                              :                and 2014-G-3190**


Appeals from the Geauga County Court of Common Pleas, Juvenile Division, Case Nos. 13 JD 000421 and 13 JD 000467.

Judgment: Affirmed.


*James R. Flaiz,* Geauga County Prosecutor, and *Katherine A. Jacob,* Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH  44024 (For Appellee – State of Ohio).

*Sheryl A. Trzaska,* Assistant State Public Defender, 250 East Broad Street, #1400, Columbus, OH  43215-9308 (For Appellant).


CYNTHIA WESTCOTT RICE, J.

{¶1}   Appellant, G.L.L., appeals from the judgment entries of the Geauga County Court of Common Pleas, Juvenile Division, adjudicating him delinquent on five counts arising from two complaints, and ordering him to serve five consecutive 90-day terms of detention.  G.L.L. contends the trial court was without jurisdiction to proceed on one complaint; that the adjudications are unsupported by sufficient evidence; that the trial court denied him the constitutional right to confront witnesses and present his

defense; and, that he cannot be sentenced to five consecutive terms of detention. Finding no error, we affirm.

{¶2} On or about August 9, 2013, G.L.L. was paroled from the Department of Youth Services ("DYS"), and placed at the Tri-State Youth Academy. He was subject to a Unified Case Plan. On October 8, 2013, G.L.L. met with his case worker from Geauga County Job and Family Services ("GCJFS"), Jodi Miller. He reported to her alleged instances of harassment by two Tri-State employees, Mr. Wolf and Mr. Simmons. A Tri-State employee was present in the room during part of the meeting. Based on G.L.L.'s report, Ms. Miller commenced an investigation, which remained ongoing at the time of hearing.

{¶3} On October 10, 2013, G.L.L. was part of a work detail sent to mow grass. Evidently he was last in line. At hearing, Mr. Daniel Gentile, from Tri-State, testified he tapped G.L.L. on the back, to get him to return to the group, and, in response, G.L.L. punched him in the face. G.L.L. testified Mr. Gentile pushed him vigorously; grabbed him; and, they both accidentally fell to the ground. G.L.L. claimed Mr. Gentile and another Tri-State employee, Mr. Stephen Cline, restrained him for a lengthy period.

{¶4} On October 11, 2013, G.L.L. slashed his arms, and told Tri-State staff he had swallowed glass and tacks (he had not). He hoped to be transferred out of Tri-State. Mr. Gentile and Mr. Cline transported G.L.L. to the hospital, Mr. Cline driving. They testified that on the way, G.L.L. grabbed Mr. Cline's hoodie, and pulled it, causing the latter to drive off the road, and get a red mark on his neck. G.L.L. testified Mr. Cline simply drove off into a field, then pulled and ripped his own hoodie, and that Mr. Gentile hit him.

**{¶5}** On October 16, 2013, G.L.L.'s parole officer filed a complaint in three counts in the trial court, that being Case No. 13JD000421. Count 1 alleged G.L.L. had violated DYS Parole Rule 1 by punching Mr. Gentile in the face. Count 2 alleged G.L.L. had violated DYS Parole Rule 6 by cutting his arm and claiming to have ingested glass and tacks. Count 3 alleged violations of both Parole Rules 1 and 6 by grabbing Mr. Cline's hoodie and causing a car accident. On October 17, 2013, G.L.L. entered a plea of not true to all counts.

**{¶6}** On November 21, 2013, State Trooper Gary Lewis, who had investigated the automobile accident on October 11, 2013, filed a complaint in two counts against G.L.L. in the Knox County Court of Common Pleas, Juvenile Division. Count 1 alleged G.L.L. had committed what would be assault, a misdemeanor of the first degree, if committed by an adult, in violation of R.C. 2903.13(A), by grabbing Mr. Cline's hoodie and pulling on it. Count 2 alleged G.L.L. had committed obstruction and interference affecting view and control of driver, a minor misdemeanor if committed by an adult, in violation of R.C. 4511.70(B), by grabbing the hoodie.

**{¶7}** On November 22, 2013, The Knox County court transferred the matter to Geauga County, which accepted it as Case No. 13JD000467. On December 12, 2013, G.L.L. entered a plea of not true to both counts.

**{¶8}** An adjudicatory hearing was held on January 31, 2013. Testifying for the state were G.L.L's parole officer, Hasani Ngozi; Mr. Gentile; Mr. Cline; Brian Bowen, another Tri-State employee; and Trooper Lewis. G.L.L. testified on his own behalf, as did Ms. Miller, his GCJFS case worker. On cross examination, defense counsel attempted to question Mr. Ngozi about G.L.L.'s allegations leading to Ms. Miller's

3

investigation.  The trial court allowed Mr. Ngozi to state he was aware of the allegations, but not what he had heard.  The trial court did not allow Mr. Gentile to testify about the allegations on cross examination.  The trial court did allow Mr. Cline to testify he was aware of the allegations, but sustained objections as to what he had heard.  Similarly, Ms. Miller was allowed to testify she was investigating, but not what she had learned.

{¶9}  At the end of the hearing, the trial court concluded the state had proved its case on all of the counts beyond a reasonable doubt.  Dispositional hearing went forward February 3, 2013, with the trial court ordering G.L.L. to serve five consecutive terms of 90 days detention on the counts, with 109 days credit for detention served.  Appeals were timely noticed, and the cases consolidated.

{¶10}  G.L.L. assigns three errors.  The first assignment of error provides:

{¶11}  "The juvenile court erred when it adjudicated G.L.L. of delinquency, in violation of R.C. 2152.02(F)(2), absent sufficient evidence that G.L.L. violated an order of the court made under Chapter 2151 or 2151 of the Revised Code.  Fifth and Fourteenth Amendments to the U.S. Constitution; Section 10, Article 1, Ohio Constitution."

{¶12}  G.L.L. first asserts that the order reflecting the conditions of supervised release to DYS parole does not constitute an "order" of the court under R.C. 2152.02(F)(2).  He specifically argues the complaint in Case No. 13JD000421 alleged he was delinquent for violating DYS parole rules.  R.C. 2152.02(F)(2) provides a delinquent child includes: "Any child who violates any lawful *order of the court* made under this chapter or under Chapter 2151. of the Revised Code * * *[.]"  (Emphasis added.)

4

**{¶13}** R.C. 2152.22(A) provides, in pertinent part: "When a child is committed to the legal custody of the department of youth services under this chapter, the *juvenile court relinquishes control with respect to the child so committed*, except as provided in divisions * * * (H) of this section  * * *[.]"  (Emphasis added.)

**{¶14}** R.C. 2152.22(H) provides, in pertinent part:

**{¶15}** (H) When a child is committed to the legal custody of the department of youth services, the court retains jurisdiction * * * to perform the functions specified in section 5139.52 of the Revised Code with respect to violations of the conditions of supervised release granted by the release authority and to the revocation of supervised release granted by the release authority.

**{¶16}** R.C. 5139.52(F) provides, in pertinent part:

**{¶17}** If a child who is on supervised release is arrested under an order of apprehension, under a warrant, or without a warrant * * *, *and if a motion to revoke the child's supervised release is filed*, the juvenile court of the county in which the child is placed promptly shall schedule a time for a hearing on whether the child violated any of the terms and conditions of the supervised release.  If a child is released on supervised release and the juvenile court of the county in which the child is placed otherwise has reason to believe that the child has not complied with the terms and conditions of the supervised release, the court of the county in which the child is placed, in its discretion, may schedule a time for a hearing on

5

whether the child violated any of the terms and conditions of the supervised release. * * * If the court of the county in which the child is placed on supervised release conducts a hearing and determines at the hearing that the child violated one or more of the terms and conditions of the child's supervised release, the court, if it determines that the violation was a serious violation, *may revoke the child's supervised release* and order the child to be returned to the department of youth services for institutionalization or, in any case, may make any other disposition of the child authorized by law that the court considers proper. (Emphasis added.)

{¶18} In sum, G.L.L. argues he cannot be adjudicated delinquent *except* for violating an order of the juvenile court. R.C. 2152.02(F)(2). He notes he was under DYS supervised release or parole at the time of the incidents alleged, and cites to R.C. 2152.22(A) for the proposition that the trial court had relinquished all control over him to DYS except for matters relating to violation of and revocation of supervised release. R.C. 2152.22(H). He observes that R.C. 5139.52(F), controlling procedures for juvenile parole violations, speaks to filing of a motion to revoke supervised release – *not* to the filing of a new complaint for adjudicating delinquency. *Consequently*, he argues his parole violations were *not* violations of an order of the juvenile court, but *only* violations of his supervised release, and that he could not be held delinquent through the filing of a new complaint, but could only have his supervised release revoked by motion. We do not agree.

{¶19} Preliminarily, we do not find this issue actually challenges the sufficiency of the evidence under which G.L.L. was adjudicated delinquent. It is in the nature of a challenge to the jurisdiction of the trial court in Case No. 13JD000421. The issue of a court's jurisdiction is a question of law reviewed de novo. *In the Matter of D.P.J. and P.R.J.*, 4th Dist. Scioto No. 13CA3532, 2013-Ohio-4469, ¶11.

{¶20} Next, we agree with the state this issue was waived. Juv.R. 22(D), captioned "Prehearing motions," provides, in pertinent part:

{¶21} Any defense, objection or request which is capable of determination without hearing on the allegations of the complaint may be raised before the adjudicatory hearing by motion. The following *must* be heard before the adjudicatory hearing, though not necessarily on a separate date:

{¶22} (1) Defenses or objections based on defects in the institution of the proceeding[.] (Emphasis added.)

{¶23} Juv.R. 22(E), captioned "Motion time," provides, in pertinent part: "Except for motions filed under division (D)(5) of this rule, all prehearing motions shall be filed by the later of: "(1) seven days prior to the hearing * * *[.]"

{¶24} No motion to dismiss the complaint in Case No. 13JD000421 was ever filed in the trial court. Defense counsel only raised the issue by oral motion at the commencement of the dispositional hearing.

{¶25} Assuming, arguendo, the issue was not waived, we still conclude G.L.L's argument substantively incorrect.

**{¶26}** R.C. 5139.51 governs "supervised release," or parole, from DYS. R.C. 5139.51(B)(1) provides that when a child is placed on supervised release, DYS must prepare a supervised release plan which is sent to the juvenile court of the county in which the child is to be placed. The juvenile court may then add terms and journalize the supervised release plan, as well as sending a copy to DYS.

**{¶27}** In this case, the record contains G.L.L.'s "Unified Case Plan," prepared by DYS at the time he was placed on supervised release at Tri-State. Nothing in the record indicates it was journalized as a court order. Regarding this situation, R.C. 5139.51(B)(1) provides, in pertinent part:

> **{¶28}** If, * * * after its receipt of the copy of the supervised release plan, the juvenile court of the county in which the child will be placed neither enters in its journal the supervised release plan nor enters in its journal the supervised release plan plus additional terms and conditions added by the court, the court and the department of youth services may attempt to resolve any differences regarding the plan within three days. If a resolution is not reached within that three-day period, thereafter, *the supervised release plan shall be enforceable to the same extent as if the court actually had entered the supervised release plan in its journal.* (Emphasis added.)

**{¶29}** Thus, the statute provides the case plan effectively operates as an order of the juvenile court. This brings violations of the case plan (which includes the parole rules) within the ambit of R.C. 2152.02(F)(2), defining a delinquent child as one "who violates any lawful order of the court made under this chapter or under chapter 2151. of

8

the Revised Code. Consequently, G.L.L.'s violations of the parole rules could be the subject of a new delinquency complaint, rather than being addressed solely by motion to revoke his supervised release.

{¶30} The Supreme Court of Ohio's recent decision in *In re S.B.*, 121 Ohio St.3d 279, 2009-Ohio-507, provides guidance on this issue. In *S.B.*, the appellant was adjudicated delinquent and placed on probation by the juvenile court. She failed to meet the terms imposed by the court, and a new delinquency complaint was filed. The complaint was filed pursuant to R.C. 2152.02(F), just as in Case No. 13JD000421. The appellant pleaded true to that complaint and was adjudicated delinquent, with further probation imposed. The appellant again failed to meet the terms of probation, and a third delinquency complaint was filed under R.C. 2152.02(F). The appellant moved to dismiss the complaint as a violation of due process, which the trial court denied. On appeal, the Fifth Appellate District affirmed; the appellant was subsequently granted a discretionary appeal to the Supreme Court of Ohio.

{¶31} On appeal to the Court, the appellant argued, inter alia, she should have been charged with violating probation, instead of a new delinquency charge. The Supreme Court of Ohio held:

{¶32} While it may be a better policy for the state to address a juvenile's nonconforming behavior through probation revocation rather than additional delinquency charges, we find nothing in the Revised Code that requires the state to employ one approach over the other. In this instance, the trial court acted within the express

9

authority granted to it by statute. Because that action was lawful, this court has no grounds to disturb it.  *S.B.*, *supra*, at ¶15.

{¶33} Although *S.B.* involved probation or parole terms imposed directly by the juvenile court rather than a violation of ODYS parole rules, as in this matter, the circumstances are sufficiently similar to apply the same reasoning.  We accordingly hold a motion to revoke a juvenile's supervised release, filed pursuant to R.C. 5139.52(F), is not the only means of addressing a parole violation.  The state may proceed under that statute, but it may also proceed pursuant to R.C. 2152.02(F), by way of R.C. 5139.51(B)(1).    For these reasons, the trial court was not required to dismiss the delinquency complaint in Case No. 13JD000421.

{¶34} G.L.L.'s second issue under his first assignment of error asserts there was insufficient evidence to support the finding of delinquency under R.C. 2151.02(F). G.L.L. fails to direct any argumentation at the sufficiency of the evidence underlying his delinquency adjudications. Rather, his entire argument is directed to the propriety of dealing with his parole violations via complaint, rather than motion to revoke.  Having addressed this point, we decline to reach the second issue.   App.R. 12(A)(2); *see also* App.R. 16(A)(7).

{¶35} G.L.L.'s first assignment of error lacks merit.

{¶36} G.L.L's second assignment of error provides:

{¶37} "The juvenile court erred when it prevented G.L.L. from establishing witness bias and from presenting his defense.  Evid.R. 616(A); Fifth, Sixth, and Fourteenth Amendments to the U.S. Constitution; Section 10, Article 1, Ohio Constitution."

10

{¶38} Under this assignment of error, G.L.L. asserts the juvenile court erred when it prevented him from establishing witness bias and presenting his defense. G.L.L. cites to Evid.R. 616(A), captioned "Bias," which provides: "Bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence." G.L.L. contends the trial court infringed his right to confront the witnesses against him, by refusing defense counsel the opportunity to cross examine the state's witnesses, particularly the Tri-State employees, on whether their motivation was to retaliate against G.L.L. for reporting alleged harassment by Tri-State employees Wolf and Simmons.

{¶39} We review a trial court's evidentiary rulings, including those regarding the scope of cross examination, for abuse of discretion. *State v. Montie*, 11th Dist. Portage No. 2006-P-0058, 2007-Ohio-2317, ¶13. The phrase "abuse of discretion" is one of art, connoting judgment exercised by a court which neither comports with reason, nor the record. *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925). An abuse of discretion may be found when the trial court "applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact." *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, ¶15 (8th Dist.).

{¶40} In this case, the trial court generally allowed defense counsel to establish the Tri-state employees testifying were aware of G.L.L.'s allegations against Mr. Wolf and Mr. Simmons, but excluded any testimony regarding their knowledge of the nature of those allegations, as hearsay. The trial court made the same ruling regarding the testimony of Ms. Miller, the GCJFS case worker investigating the allegations.

11

{¶41} G.L.L. cites *State v. Denis*, 117 Ohio App.3d 442, 446-447 (6th Dist.1997), in support of his argument. In *Denis*, the trial court disallowed the defendant to present evidence regarding whether the state's witness had filed domestic violence complaints against the defendant in the past. The court concluded the documents included inadmissible hearsay. The appellate court reversed the defendant's conviction, holding that an inquiry into prior complaints "would not be to establish the truth of any complaints but would be relevant to [the witness'] credibility," and would be properly used to establish bias against the defendant. *Id.* at 447. G.L.L. maintains any inquiry into how the state's witnesses knew about his allegations would have been offered to establish bias, not for the truth of the matter itself. Assuming the court erred in excluding the evidence, any error in its exclusion was harmless beyond a reasonable doubt.

{¶42} "The Supreme Court of Ohio has held that error is harmless if 'there is no reasonable possibility that the evidence may have contributed to the accused's conviction.' *State v. Bayless* (1976), 48 Ohio St.2d 73, * * *, paragraph seven of the syllabus. The Supreme Court of Ohio has also stated that it is appropriate to find error harmless where there is 'either overwhelming evidence of guilt or some other indicia that the error did not contribute to the conviction.' *State v. Ferguson* (1983), 5 Ohio St.3d 160, 166, fn. 5, * * *. See, also, Crim.R. 52(A) (harmless error defined as 'any error, defect, irregularity, or variance which does not affect substantial rights * * *.) To find harmless error, a reviewing court must be able to 'declare a belief that the error was harmless beyond a reasonable doubt.' *Bayless*, 48 Ohio St.2d 73, * * *, at paragraph

seven of the syllabus." (Parallel citations omitted.) *State v. Slocum,* 6th Dist. Wood No. WD-04-054, 2005-Ohio-3859, ¶41.

**{¶43}** This matter was tried to the court, not a jury. Defense counsel was allowed to put on the record that Mr. Cline, at least, was aware of G.L.L's allegations, and that Ms. Miller continued to investigate them. G.L.L. testified fully as to his belief the Tri-State employees were conspiring against him due to his allegations against Mr. Wolf and Mr. Simmons.

**{¶44}** Further, any alleged bias by the Tri-State employees would not constitute a defense to the counts against G.L.L. Their alleged bias is no defense to hitting Mr. Gentile or to pulling on Mr. Cline's hoodie and causing the car accident. The only count it *might* relate to is the second count in Case No. 13JD000421, alleging delinquency through violation of DYS Parole Rule 6. That provides: "I will follow the rules of my parents/guardians or placement facility and I will not change my residence without prior approval of my parole officer." The second count in Case No. 13JD000421 alleged G.L.L. violated this rule by cutting his arm and telling the Tri-State employees he had consumed tacks and glass. G.L.L.'s parole officer explained, under close questioning from the trial judge, that this was a violation of Parole Rule 6, since G.L.L.'s motivation was to get out of Tri-state and into another facility. G.L.L. admitted this, and explained it was due to his fear of retaliation at Tri-State. The evidence that bias and a desire to retaliate against G.L.L. for his allegations against Mr. Wolf and Mr. Simmons could be relevant in this respect; G.L.L., however, testified to the entire issue and the exclusion of cumulative evidence is harmless error. *See, e.g., Slocum* at ¶42.

**{¶45}** G.L.L.'s second assignment of error lacks merit.

{¶46} G.L.L.'s third assignment of error provides:

{¶47} "The juvenile court erred when it committed G.L.L. to consecutive 90-day terms of detention. Fifth and Fourteenth Amendments to the U.S. Constitution; Section 10, Article 1, Ohio Constitution."

{¶48} Preliminarily, the record indicates appellant was released on January 10, 2014; hence, any issue pertaining to his sentence has been rendered moot. If, as here, the issue is capable of repetition, yet evading review, however, the mootness doctrine does not apply. *See, e.g., State ex rel. Dispatch Printing Co. v. Geer*, 114 Ohio St.3d 511, 2007-Ohio-4643, ¶10. We shall therefore address the merits of this assigned error.

{¶49} Under his third assignment of error, G.L.L. asserts the juvenile court erred when it committed G.L.L. to detention for misdemeanor adjudications for a total of 450 days. G.L.L. argues a juvenile court can only make a disposition regarding an entire case, and thus the trial court erred in requiring him to serve detention on each count found true. We do not agree.

{¶50} R.C. 2152.19 provides, in pertinent part:

{¶51} (A) If a child is adjudicated a delinquent child, the court may make any of the following orders of disposition, in addition to any other disposition authorized or required by this chapter:

{¶52} * * *

{¶53} (3) Place the child in a detention facility or district detention facility operated under section 2152.41 of the Revised Code, for up to ninety days[.]

14

**{¶54}** Those appellate courts considering the issue have concluded juvenile courts must enter a disposition on each count of a complaint. *In re Huckleby*, 3d Dist. Defiance No. 4-06-40, 2007-Ohio-6149, ¶9-11; *In re S.S.*, 9th Dist. Summit No. 24565, 2009-Ohio-4515, ¶4; *In Re D.M.*, 8th Dist. Cuyahoga No. 95386, 2011-Ohio-2036, ¶5-8.

**{¶55}** In *In re H.V.*, 138 Ohio St.3d 408, 2014-Ohio-812, the Supreme Court of Ohio was asked to decide, inter alia, whether a juvenile court has the authority to commit a delinquent juvenile to the Ohio Department of Youth Services for a supervised-release violation and order that period of commitment to be served consecutively to the commitment period imposed for the crime that resulted in the violation of supervised release. The Court recognized that R.C. 2152.17(F) authorized a court to impose consecutive commitment periods when a juvenile commits two or more acts that would be felonies if committed by an adult. The Court observed, however, that even though the crime that resulted in H.V.'s supervised-release violation was a felony, R.C. 2152.17 did not apply because the supervised-release violation did not, itself, represent an additional felony. The Court nevertheless determined that this did not mean the juvenile court lacked authority to impose consecutive terms for the crime and the violation. According to the Court, "[a]uthority to impose consecutive terms can be found in R.C. 2152.19(A)(8), which provides that '[i]f a child is adjudicated a delinquent child, the court may * * * [m]ake any further disposition that the court finds proper. * * * .'" *H.V.*, *supra*, at ¶18.

**{¶56}** The Court pointed out that simply because R.C. 2152.17 sets forth circumstances under which a juvenile court may impose consecutive terms of commitment, it does not necessarily follow juvenile courts lack statutory authority to

15

impose consecutive terms in other situations. *H.V.*, *supra*, at ¶19. The Court emphasized H.V. was a repeat offender whose criminal conduct was escalating. Under such circumstances, the Court determined, it would be contrary to the purposes of juvenile dispositions in Ohio, which require, among other things, juvenile courts to protect the public interest and safety as well as hold offenders accountable for their actions by imposing graduated sanctions. *H.V.*, *supra*, at ¶20, citing R.C. 2152.01(A). The Court consequently determined R.C. 2152.19(A)(8) provides a separate statutory mechanism for juvenile courts to impose a potentially more severe sanction when necessary to achieve the purposes set forth under R.C. 2152.01(A).

{¶57} Following the reasoning of the Court in *H.V.*, the juvenile court did not err in imposing consecutive terms in the detention center. Appellant was a repeat offender whose delinquent conduct had not declined. The instant case was a result of three counts of delinquency being filed against appellant for violating the Ohio Department Youth Services Specific Rules of Parole. And, one of the counts of delinquency was premised upon an assault.

{¶58} Moreover, while the matter was pending, the record indicates appellant continued to engage in subversive and hostile behavior with detention-center staff, the prosecutor, and other individuals involved in his case. The record indicates, appellant threatened to spit on the prosecutor and have the juvenile court judge "rubbed out." He made racially and sexually derogatory and demeaning slurs toward unnamed staff members. He simulated and/or claimed to be masturbating while yelling and grunting loudly in his room. He called staff members m*****f****** and threatened to kill both them and their wives as well as rape their daughters and shoot their "retarded kids."

16

**{¶59}** In light of the conduct that caused the underlying charges to be filed, as well as appellant's antisocial and obstreperous behavior relating to the detention center staff, the judge, and the prosecutor, the court did not err in fashioning a term of confinement that involved the imposition of consecutive terms. Permitting appellant to remain in the detention center for only 90 days for each count would be inconsistent with the policies of holding offenders accountable for their actions and imposing graduated sanctions for those who have repeatedly offended. As the Supreme Court of Ohio has noted:

> **{¶60}** [s]ome juveniles exhibit more serious criminal tendencies and behavior than do other juveniles. It would be unfair to require that a child who has committed numerous delinquent acts to be committed for the same period of time as a child who was determined to be delinquent for only one act. The first child should not be rewarded for a crime spree by an interpretation that limits the discretion of a juvenile court. *In re Caldwell*, 76 Ohio St.3d 156, 161 (1996).

**{¶61}** G.L.L.'s actions leading to the complaint and his subsequent actions relating to those he encountered while in custody demonstrate his criminal tendencies and behavior were severe and merited a harsher term of confinement than a mere 90 days. We therefore hold the trial court's imposition of consecutive terms of confinement was both authorized by statute and a reasonable exercise of its sound discretion.

**{¶62}** We shall briefly address the position advanced by the dissent under this assignment of error. The dissent maintains, pursuant to the *dissenting opinion* in *In re*

17

*H.V.*, 138 Ohio St.3d 408, 2014-Ohio-812, the General Assembly's enactment of R.C. 2152.17, which sets forth certain circumstances in which delinquent children may be subjected to consecutive terms of confinement, limits the authority of a juvenile court to impose such terms. The dissent observes that statute permits consecutive terms relating to acts which would be felonies if committed by an adult, but not acts which would be misdemeanors. Pursuant to the maxim expressio unius est exlusio alterius, the dissent concludes, the juvenile court lacked authority to impose consecutive terms in this case because the acts at issue would be misdemeanors if committed by an adult. While the dissent in *H.V.* provides an alternative viewpoint on the issue at bar, it is beyond cavil that the majority opinion controls the disposition of this issue and is binding authority on this court. Because the dissent's position has been rejected by a majority of the Supreme Court, it has no legal merit.

{¶63} In addition to flouting the holding and rationale set forth in *H.V.*, *supra*, the dissent also declines to follow precedent from this court relating to the doctrine of merger in juvenile delinquency proceedings. In *In re J.D.B.*, 11th Dist Ashtabula No. 2002-A-0010, 2002-Ohio-6913, this court adopted the Tenth Appellate District's ruling from *In re Skeens*, 10th Dist. Franklin Nos. 81 AP-882 and 81 AP-883, 1982 Ohio App. LEXIS 12181 (Feb. 25, 1982), which held R.C.2941.25(A), Ohio's criminal merger statute, does not apply to juvenile delinquency matters. This court, quoting *Skeens*, pointed out:

{¶64} "R.C. 2941.25(A) does not apply to situations where a minor is alleged to be a delinquent minor since, under our Juvenile Code, such a minor is not charged with a crime. While the commission of

18

acts which would constitute a crime if committed by an adult sets the machinery of the Juvenile Court in motion, the issue before the court is whether or not the minor has engaged in the kind of conduct that constitutes delinquency and will therefore justify the intervention of the state to assume his protection and custody. Evidence that the minor committed acts that would constitute a crime if committed by an adult is used only for the purpose of establishing that the minor is delinquent, not to convict him of a crime and subject him to punishment." *J.D.B.*, *supra*, at ¶19, quoting *Skeens*, *supra*, at *6-*7.

**{¶65}** The Ohio Supreme Court has acknowledged that punishment is not the goal of the Ohio juvenile system, except as necessary to direct the child toward the goal of rehabilitation. *In re Caldwell*, 76 Ohio St.3d 156, 157 (1996). Hence, even though juvenile delinquency laws feature inherently criminal aspects, the Court has recognized that the overriding purpose of the juvenile system is "to provide for the care, protection, and mental and physical development of children, to protect the public from the wrongful acts committed by juvenile delinquents, and to rehabilitate errant children and bring them back to productive citizenship, or, as the statute states, to supervise, care for and rehabilitate those children." *Id.* at 157, quoting R.C. 2151.01. Given these points, not only would applying R.C. 2941.25 to juveniles be conceptually improper (because the express language of the statute applies only to convictions), it would also inure to the disadvantage of troubled juveniles who stand to benefit from additional treatment during their confinement under circumstances of multiple delinquency determinations, even if

19

those determinations would be allied offenses were the offender an adult. Contrary to the dissent's position, there is no sound policy basis or legal justification that would support deviating from this court's precedent set forth in *J.D.B.*, *supra.*

{¶66} G.L.L.'s third assignment of error lacks merit.

{¶67} For the foregoing reasons, G.L.L.'s assignments of error lack merit and the judgment of the Geauga County Court of Common Pleas, Juvenile Division, is affirmed.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶68} Finding merit in all three assignments of error, I would reverse and remand.

{¶69} Regarding the first assignment of error, I agree with G.L.L.'s first issue presented: that an order reflecting the conditions of supervised release to ODYS parole does not constitute an "order" of the court, pursuant to R.C. 2152.02(F)(2), and that violation of such an order cannot constitute the basis for a finding of delinquency. I believe the state must address such violations by a motion to revoke pursuant to R.C. 5139.52(F).

{¶70} The state contends this issue was waived. Admittedly, defense counsel only raised the issue by oral motion at the commencement of the dispositional hearing,

20

in contravention of Juv.R. 22(E). However, this court may take cognizance of issues waived if they amount to plain error. *See, e.g.*, *In re M.R.*, 3d Dist. Defiance No. 4-11-12, 2011-Ohio-6528, ¶20-25. I would find the failure to dismiss Case No. 13JD000421, subjecting G.L.L. to three counts of delinquency which should not have been filed, was plain error, since the trial court retains jurisdiction to dismiss a complaint.

**{¶71}** The state relies on two recent decisions of the Supreme Court of Ohio to support its assertion that revocation of juvenile parole may be accomplished either by motion to revoke, or by bringing a new complaint for delinquency. In *In re L.A.B.*, 121 Ohio St.3d 112, 2009-Ohio-354, ¶49, the court stated:

**{¶72}** "Probation may not be revoked unless the juvenile has violated a court order. The juvenile again becomes a delinquent juvenile under R.C. 2152.02(F)(2) (being '(a)ny child who violates any lawful order of the court made under this chapter or under Chapter 2151 of the Revised Code'). During a *probation revocation hearing*, the court determines whether a juvenile has violated a condition of probation. Because the conditions of probation are established through a court order, a violation of probation also constitutes a violation of a court order." (Emphasis added.)

**{¶73}** Thus, *L.A.B.* stands for both the proposition that juvenile parole violations are violations of court orders, *and* the proposition such violations are properly dealt with by a motion to revoke under R.C. 5139.52(F). This tends to support G.L.L.'s argument.

**{¶74}** In *In re S.B., supra*, ¶15, the court stated that juvenile parole violations may be dealt with either by way of revocation, or by the filing of additional delinquency charges. However, nothing in *In re S.B.* clearly establishes that the violations complained of were violations of ODYS parole rules.

**{¶75}** Thus, *In re L.A.B.* and *In re S.B.* do not provide us clear direction. However, "a juvenile court is a creature of statute and therefore has only such powers as are conferred upon it by the legislature." *In re H.V.*, *supra,* at ¶54, citing *In re Agler*, 19 Ohio St.2d 70, 72-74 (1969) (O'Connor, C.J., dissenting). Further, "[a]s a general rule, specific statutes prevail over general statutes. R.C. 1.51; *State ex rel. Slagle v. Rogers*, 103 Ohio St.3d 89, 2004-Ohio-4354, ¶14, * * *." (Parallel citation omitted.) *FCDB LBPL 2008-1 Trust v. Remely*, 11th Dist. Geauga Case No. 2012-G-3098, 2013-Ohio-4960, ¶28 (O'Toole, J., dissenting). R.C. 5139.52(F) provides a specific procedure for dealing with parole violations by juveniles on supervised release from ODYS – the filing of a motion to revoke. The statutes cited by the state simply provide that a juvenile is delinquent if he or she violates a court order, R.C. 2152.02(F)(2); and that supervised release plans may operate as court orders. R.C. 5139.51(B)(1). They are general. As the legislature has provided a specific statute with a specific procedure dealing with violations of ODYS supervised release, it must be applied*, to facilitate the legislative intent.* R.C. 5139.52(F) controls in the situation presented in this appeal.

**{¶76}** The trial court should have dismissed the delinquency complaint in Case No. 13JD000421, since the legislature has given specific instructions on how the juvenile court must operate.

**{¶77}** I also find merit in G.L.L's second assignment of error – that he should have been allowed to cross examine the Tri-State employees for bias, on whether they were motivated to retaliate against G.L.L. for reporting alleged harassment by Tri-State employees Wolf and Simmons.

**{¶78}** "Due process of law requires that in a juvenile delinquency proceeding where the juvenile may be committed to a state institution many, if not most, of the rights afforded to adult criminal defendants must be afforded to the juvenile. *In re: Gault* (1967) 387 U.S. 1, 30. Included among these rights is * * * the right to confrontation. *Id.* at 31-56." *In re Caruso*, 6th Dist. Lucas No. L-90-250, 1991 Ohio App. LEXIS 2292, *7 (May 17, 1991).

**{¶79}** "'The Sixth Amendment to the United States Constitution provides: "In all criminal prosecutions, the accused shall enjoy the right to (* * *) be confronted with the witnesses against him (* * *)." Further, Article I, Section 10 of the Ohio Constitution provides, in relevant part: "In any trial, in any court, the party accused shall be allowed to appear and defend in person and with counsel (***) (and) meet the witnesses face to face ***."' *State v. Minier* (Sept. 28, 2001), 11th Dist. No. 2000-P-0025, 2001-Ohio-4285, ¶7, citing *Delaware v. Van Arsdall* (1986), 475 U.S. 673, 679, * * *." (Parallel citations omitted.) *Montie*, *supra*, ¶14.

**{¶80}** Thus, in juvenile proceedings where the child faces a loss of freedom, the child's constitutional rights, including the right to confront the witnesses against him or her must be safeguarded. As the court stated in *United States v. The William*, D.Mass. No. 16,700, 1808 U.S Dist. LEXIS 5, *20 (Sept. 1808), quoting Alexander Hamilton, The Federalist No. 78: "[T]he prior act of a superior ought to be preferred to the subsequent act of an inferior and subordinate authority; and, that, accordingly, whenever a particular statute contravenes the constitution, it will be the duty of the judicial tribunals to adhere to the latter, and disregard the former." Therefore, the interpretation and application of

statutes and rules, including the Rules of Evidence, must yield to the superior authority of the constitution.

**{¶81}** While we review a trial court's evidentiary rulings, including those regarding the scope of cross examination, for abuse of discretion, *Montie*, *supra*, at ¶13, "[w]e review alleged violations of the Confrontation Clause de novo. *State v. Smith*, 162 Ohio App.3d 208, 2005-Ohio-3579, * * *, ¶8 (8th Dist), citing *United States v. Robinson*, 389 F.3d 582, 592 (6th Cir.2004)." (Parallel citation omitted.) *State v. Crawley*, 8th Dist. Cuyahoga No. 99636, 2014-Ohio-921, ¶26.

**{¶82}** In this case, the trial court generally allowed defense counsel to establish the Tri-state employees were aware of G.L.L's allegations against Mr. Wolf and Mr. Simmons, but excluded any testimony regarding their knowledge of the nature of those allegations, as hearsay. The trial court made the same ruling regarding the testimony of Ms. Miller, the GCJFS case worker investigating the allegations.

**{¶83}** Admission of hearsay testimony has been allowed by the appellate courts of this state to show bias under Evid.R. 616(A). *See, e.g.*, *Denis*, *supra,* at 446-447. In *Denis*, the appellant was found guilty of domestic violence. *Id.* at 443. He had subpoenaed the clerks and records keepers of various courts and police departments, intending to show that one of the principal witnesses against him, Pamela Hendrix, had a history of filing harassing and untrue complaints against him. *Id.* at 443, 445-446. The trial court quashed the subpoenas, holding the evidence from the clerks and record keepers would be hearsay. *Id.* at 445, 446. The Sixth District reversed, stating:

**{¶84}** "[T]he credibility of these witnesses was crucial to appellant's conviction. In attempting to call the records keepers of the various courts and police stations,

24

appellant, though inarticulately, argued that he was trying to establish that Hendrix had a motive to lie about the altercation. That is, he attempted to establish that Hendrix and her husband had a history of harassing appellant. Evid.R. 616 states that 'bias, prejudice, interest, or any motive to misrepresent may be shown to impeach the witness either by examination of the witness or by extrinsic evidence.' In *State v. Williams* (1988), 61 Ohio App. 3d 594, 597, * * *, quoting from 3 Weinstein, Evidence (1988), Section 607(03), at 607-27, the court stated:

**{¶85}** "'Because the possible bias of a witness is always significant in assessing credibility, the trier of fact must be sufficiently informed of the underlying relationships, circumstances, and influences operating on the witness "so that, in the light of his experience, he can determine whether a mutation in testimony could reasonably be expected as a probable human reaction."'"

**{¶86}** "Additionally, we note that Ohio '(* * *) follows the minority rule and does not require that a foundation be laid as a prerequisite for the introduction of extrinsic evidence of witness bias.' *Id.* Accordingly, the trial court erred in quashing the subpoenas and in not allowing appellant to call these witnesses to inquire into whether Hendrix and appellant had previously filed complaints against each other. Such testimony would not go to the truth of the matter asserted, *i.e.* the validity of those complaints, but would rather be indicative of a bias or prejudice on the part of Hendrix which might taint her credibility." (Parallel citation omitted.) *Denis*, *supra*, at 446-447.

**{¶87}** Mr. Gentile appears to have been the sole witness to (and victim of) G.L.L.'s alleged assault on October 10, 2013. He and Mr. Cline were the sole witnesses to the alleged assault in the car on October 11, 2013. Testimony from them

25

regarding their knowledge of, and attitude toward, G.L.L.'s allegations against Mr. Wolf and Mr. Simmons would not have gone to the truth of those allegations, but was designed to determine bias or prejudice. As such, it was an abuse of discretion for the trial court to prevent defense counsel from cross examining these witnesses on the subject. *Denis*, *supra*, at 446-447.

{¶88} The majority further finds that any error in preventing the cross examination of the Tri-State employees was harmless beyond a reasonable doubt. *Slocum*, *supra*, at ¶41. I respectfully disagree. Apart from G.L.L. himself, they were the sole witnesses to his alleged assaults on October 10 and 11, 2013. G.L.L. denied those assaults, and testified he was scared that Mr. Gentile and Mr. Cline were retaliating against him for causing the investigation of Mr. Wolf and Mr. Simmons. Thus, the credibility of both Mr. Gentile and Mr. Cline went to the heart of G.L.L's only defense.

{¶89} I also find merit in G.L.L.'s third assignment of error: i.e., that he should not have been committed for five consecutive 90-day terms of detention. Fifth and Fourteenth Amendments to the U.S. Constitution; Section 10, Article 1, Ohio Constitution. I would find that, when imposing detention on a child adjudicated delinquent for what would be misdemeanors if committed by an adult, a juvenile court can only order concurrent, not consecutive, terms of detention.

{¶90} As the majority notes, those appellate courts considering the issue have concluded juvenile courts must enter a disposition on each count of a complaint. However, all of these cases cited by the majority dealt with whether a judgment failing to dispose of each count in a multi-count complaint was a final, appealable order, not whether consecutive terms of detention or commitment to ODYS were proper.

**{¶91}** The majority relies on the recent decision of *In re H.V.*, *supra*, in concluding a juvenile court can impose consecutive commitments to ODYS for a violation of supervised release, and the infraction resulting in that violation. *Id.* at ¶1. The majority in *H.V.* found that R.C. 2152.19(A)(8) provides such authority. It further cited to its prior decision in *In re Caldwell*, 76 Ohio St.3d 156 (1996) for the proposition a juvenile court may impose consecutive terms of commitment, apart from those circumstances enumerated by statute.

**{¶92}** The chief justice, joined by Justice Pfeiffer, wrote a powerful dissent in *H.V.* Relevant to this case, she wrote:

**{¶93}** "In the face of silence on the issue of consecutive terms of institutionalization, it should not be inferred that a juvenile court has the discretion to order multiple confinement terms to be served consecutively. Although this court made that inference in *In re Caldwell*, 76 Ohio St.3d 156, 1996 Ohio 410, * * * (1996), the circumstances of *Caldwell*, both in law and in fact, are far different from the circumstances of the present case.

**{¶94}** "In *Caldwell*, the child had been adjudicated delinquent in 1994 in two cases that were heard together. *In re Caldwell*, 10th Dist. Franklin Nos. 94APF07-996 and 94APF07-997, 1995 Ohio App. LEXIS 17, * * * (Jan. 31, 1995). In the first case, the child was adjudicated delinquent on two fourth-degree felony counts of aggravated vehicular assault, and in the second case, the child was adjudicated delinquent on a third-degree felony count of receiving stolen property. The juvenile court imposed terms of institutionalization for each of the three counts and ordered that they be served consecutively. This court's approval of the juvenile court's dispositional decision was

based on the fact that (1) the applicable version of R.C. Chapter 2151 made no mention of consecutive dispositions, (2) the only guidance on the issue was found in the instructions that a court shall '(m)ake any further disposition that the court finds proper' under former R.C. 2151.355(A)(11), Am.Sub.H.B. No. 725, 144 Ohio Laws, Part IV, 6368, 6372, effective April 16, 1993, and (3) future cases would be governed by the then newly amended R.C. 2151.355(B)(2), Am.Sub.H.B. No. 1, 146 Ohio Laws, Part I, 31, 34, effective January 1, 1996, which expressly provided for consecutive terms of confinement in cases such as Caldwell's. *Caldwell*, 76 Ohio St.3d at 158-159, * * *, fn. 1.

{¶95} "*Caldwell* was decided at a time when R.C. Chapter 2151 governed children who were abused, neglected, or dependent, as well as juvenile delinquents. *See In re Cross*, 96 Ohio St.3d 328, 2002-Ohio-4183, * * *, ¶9. However, the juvenile statutory scheme was significantly altered in 2002 by the Juvenile Justice Reform Act, Am.Sub.S.B. No. 179, 148 Ohio Laws, Part IV, 9447. Both bodies of juvenile law were revised, and R.C. Chapter 2152 was enacted to exclusively address juvenile delinquency. *Cross* at ¶11.

{¶96} "*Caldwell* was also decided at a time when Ohio's criminal sentencing code retained the common-law preference for consecutive sentences. *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, * * *, ¶26 (stating that 'the common law prefer(red) consecutive sentences over concurrent sentences'). Comprehensive changes were made to the sentencing code by 1995 Am.Sub.S.B. No. 2, 146 Ohio Laws, Part IV, 7136, effective July 1, 1996. For example, R.C. 2929.41(A) was amended to presume that sentences would be served concurrently unless a court stated otherwise. Although

R.C. 2929.41(A) was excised by *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, * * *, the identical language of R.C. 2929.41(A) was reenacted in full by the legislature in 2011 Am.Sub.H.B. No. 86, effective September 30, 2011. Accordingly, a whole host of direct and analogous presumptions that existed at the time of *Caldwell* are no longer valid in the present day.

{¶97} "Here, we are not facing the same lack of direction on the issue of consecutive terms of confinement in the juvenile statutes as we were in *Caldwell*, and we are also facing a very different juvenile statutory scheme from what existed at the time of *Caldwell*. The General Assembly has now addressed the issue of consecutive terms of confinement for a delinquent child by enacting R.C. 2152.17. Pursuant to R.C. 2152.17(E), if a child is adjudicated a delinquent for a felony and the child also committed one of several enumerated specifications, the child's term of confinement for the specification must be served consecutively to the term of confinement for the underlying delinquent act. And pursuant to R.C. 2152.17(G), the juvenile court may impose consecutive terms of confinement if it adjudicates a child delinquent for multiple felony offenses and commits the child to the legal custody of ODYS for each offense. Neither of those circumstances applies here.

{¶98} "The Ohio Legislature having dealt with the subject, and having made certain provisions and certain exceptions thereto, it will be presumed that the Legislature has exhausted the legislative intent, and that it has not intended the practice to be extended further than the plain import of the statutes already enacted. The well-known maxim, *expressio unius est exclusio alterius*, applies. *Madjorous v. State*, 113 Ohio St. 427, 433, * * * (1925).

**{¶99}** "R.C. 2152.17 does not state that a juvenile court is permitted to order that a term of confinement imposed from a revocation disposition be served consecutively to a term of confinement from a new adjudication of delinquency. And this court has no power to create additional juvenile court authority. The extension of authority to impose consecutive confinement terms is a policy matter within the purview of the legislature. *In re M.W.*, 133 Ohio St.3d 309, 2012-Ohio-4538, * * *, ¶28 (Lanzinger, J., concurring). Just as the General Assembly amended R.C. Chapter 2152 to allow for consecutive confinement terms in certain circumstances, it could do so for the circumstances in this case." (Parallel citations omitted.) *In re H.V., supra*, ¶56-61 (O'Connor, C.J., dissenting.)

**{¶100}** I agree with the chief justice that the General Assembly's enactment of R.C. 2152.17, specifically governing the circumstances under which delinquent children may be subjected to consecutive terms of confinement, indicates the legislature's intent to limit consecutive terms to the situations enumerated. R.C. 2152.17 speaks to acts by children which would be deemed felonies if committed by an adult, not to acts which would be misdemeanors, as in this case. Both *In re Caldwell* and *In re H.V.* involved acts which would have been felonies if committed by an adult. I would decline to apply them to the instant case. Given the legislative intent embodied in R.C. 2152.17, I would hold that a juvenile court, imposing detention pursuant to R.C. 2152.19(A)(3) on a multi-count complaint(s) concerning acts which would be misdemeanors if committed by an adult, must order the detentions be served concurrently.

**{¶101}** Under this assignment of error, I would further find the counts in Case No. 13JD000467 were allied offenses of similar import, requiring merger (believing Case

30

No. 13JD000421 should have been dismissed in its entirety by the trial court, I shall not analyze it.)  The first count in Case No. 13JD000467 alleged G.L.L. was delinquent due to committing what would be misdemeanor assault on Mr. Cline by grabbing his hoodie; the second count alleged this same conduct constituted the minor misdemeanor of obstruction and interference affecting view and control of driver.

{¶102} As the majority notes, in the lead case of *In re Skeens*, *supra*, the Tenth District held the doctrine of merger does not apply in the juvenile setting, since charges of delinquency does not constitute allegations of crime.  *Id.* at *6-7.  I further recognize this court, like many other appellate courts, has followed *Skeen*.

{¶103} However, in *In re M.D. and B.D.*, 5th Dist. Knox No. 2011-CA-9, 2012-Ohio-31, the Fifth District, without discussing whether merger applied in juvenile proceedings, did a full-scale *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314 analysis, finding that the charges of what would be gross sexual imposition and felonious assault if committed by an adult did not merge.  *In re M.D. and B.D.* at ¶99-117.  In this case, G.L.L. is being subjected to detention, involving severe limitations on his freedom.  The dispositions are sufficiently similar to criminal penalties to call the doctrine of merger into play.  *See, e.g., Caruso*, *supra*, at *7.

{¶104} In *State v. Martin*, 11th Dist. Lake No. 2012-L-043, 2013-Ohio-1944, ¶19-32, we held:

{¶105} "Our review of an allied offenses question is de novo.  *State v. Williams*, 123 Ohio St.3d 482, 2012-Ohio-5699, ¶12, * * *.  'R.C. 2941.25 "codifies the protections of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution and Section 10, Article I of the Ohio Constitution, which prohibits multiple

31

punishments for the same offense." *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1 (* * *) ¶23, * * *. At the heart of R.C. 2941.25 is the judicial doctrine of merger; merger is "the penal philosophy that a major crime often includes as inherent therein the component elements of other crimes and that these component elements, in legal effect, are merged in the major crime." *State v. Botta*, 27 Ohio St.2d 196, 201, * * * (1971).' (Parallel citations omitted.) *Williams* at ¶13.

{¶106} "R.C. 2941.25 states:

{¶107} "'(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

{¶108} "'(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.'

{¶109} "'To ensure compliance with both R.C. 2941.25 and the Double Jeopardy Clause, "a trial court is required to merge allied offenses of similar import at sentencing. Thus, when the issue of allied offenses is before the court, the question is not whether a particular sentence is justified, but whether the defendant may be sentenced upon all the offenses." *Underwood* at ¶27.' *Williams,* supra, at ¶15.

{¶110} "The method employed by courts in determining whether two crimes constitute allied offenses of similar import has evolved. In *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, * * * (1999), the Supreme Court of Ohio held that '(u)nder an

R.C. 2941.25(A) analysis, the statutorily defined elements of offenses that are claimed to be of similar import are compared *in the abstract.*' *Id.*, paragraph one of the syllabus. (Emphasis sic.) Since its release, *Rance* has gone through various modifications and revisions. *See State v. Cabrales*, 118 Ohio St.3d 54, 2008-Ohio-1625, * * *; *State v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, * * *; *State v. Winn*, 121 Ohio St.3d 413, 2009-Ohio-1059, * * *.

{¶111} "The Supreme Court of Ohio revisited the allied offenses analysis again in 2010 and overruled *Rance* in *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, * * *. Under the new analysis, which this court later relied upon and embraced in *State v. May*, 11th Dist. No. 2010-L-131, 2011-Ohio-5233, '(w)hen determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25, the conduct of the accused must be considered.' *Johnson*, at the syllabus. The *Johnson* court provided the new analysis as follows:

{¶112} "'In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense *and* commit the other with the same conduct, not whether it is possible to commit one *without* committing the other. (* * *) If the offenses correspond to such a degree that the conduct of the defendant constituting commission of one offense constitutes commission of the other, then the offenses are of similar import.

{¶113} "'If the multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." (* * *).

**{¶114}** "'If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.

**{¶115}** "'Conversely, if the court determines that the commission of one offense will *never* result in the commission of the other, or if the offenses are committed separately, or if the defendant has (a) separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge.' *Id.* at ¶48-51. (Citations omitted.) (Emphasis sic.)

**{¶116}** "This court went on to state in *May*, *supra*, at ¶50–51:

**{¶117}** "''In departing from the former test, the court developed a new, more context-based test for analyzing whether two offenses are allied thereby necessitating a merger. In doing so, the court focused upon the unambiguous language of R.C. 2941.25, requiring the allied-offense analysis to center upon the defendant's conduct, rather than the elements of the crimes which are charged as a result of the defendant's conduct.'" (*State v.*) *Miller* (,11th Dist. No. 2009-P-0090, 2011-Ohio-1161,) at ¶47, citing *Johnson* at ¶48-52.

**{¶118}** "''The (*Johnson*) court acknowledged the results of the above analysis will vary on a case-by-case basis. Hence, while two crimes in one case may merge, the same crimes in another may not. Given the statutory language, however, this is not a problem. The court observed that inconsistencies in outcome are both necessary and permissible '(* * *) given that the statute instructs courts to examine a defendant's conduct – an inherently subjective determination.'" *Miller* at ¶52, quoting *Johnson* at ¶52.'" (Parallel citations omitted.)

{¶119} Applying *Johnson* to the instant matter indicates the violations set forth on both counts in Case No. 13JD000467 (misdemeanor assault and obstruction and interference affecting view and control of driver), were of similar import.  They are based on the exact same conduct: G.L.L. pulling Mr. Cline's hoodie and causing the car accident.  Further, the animus for both was the same: G.L.L.'s admitted desire to get out of Tri-State and into a hospital.  Consequently, they were allied offenses of similar import and should have merged.

{¶120} For all the reasons foregoing, I respectfully dissent.