[Cite as *In re: T.M.*, 2018-Ohio-2450.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# GEAUGA COUNTY, OHIO

| | | |
|---|---|---|
| IN THE MATTER OF: | : | **O P I N I O N** |
| T.M., DELINQUENT CHILD | : | |
| | | **CASE NOS. 2017-G-0113** |
| | | **2017-G-0114** |

Criminal Appeals from the Geauga County Court of Common Pleas, Juvenile Division, Case No. 15 JD 106.

Judgment: Reversed and remanded.

*James R. Flaiz*, Geauga County Prosecutor, and *Melissa J. Lee*, Assistant Prosecutor, Courthouse Annex, 231 Main Street, Suite 3A, Chardon, OH 44024 (For Plaintiff-Appellee, State of Ohio).

*Timothy Young*, Ohio Public Defender, and *Charlyn Bohland*, Assistant State Public Defender, 250 East Broad Street, Suite 1400, Columbus, OH 43215 (For Defendant-Appellant, Truxton Mullett).

THOMAS R. WRIGHT, J.

{¶1} Appellant, T.M., appeals the trial court's decision that he is not entitled to an immediate hearing to modify or terminate his classification as a Tier III sex offender. He contends that the hearing is required because he has satisfied all requirements placed upon him. Since we agree that an immediate hearing is mandated under the

circumstances, we reverse and remand the case for further proceedings.

{¶2} In November 2014, appellant admitted to a charge of rape, a first-degree felony under R.C. 2907.02(A)(2) in the Cuyahoga County Court of Common Pleas, Juvenile Division. On the date of this admission, appellant was 15 years old, having been born December 10, 1998. The underlying offense occurred when he was 14. His victim was 6.

{¶3} In light of the admission, the Cuyahoga County court found appellant to be a juvenile delinquent. But, because appellant was a resident of Geauga County, the Cuyahoga County court transferred the case to the Geauga County juvenile court for final disposition.

{¶4} The final dispositional hearing was held before the Geauga County trial court on April 10, 2015. The trial court ordered that appellant be committed to the custody of the Ohio Department of Youth Services (ODYS) "for an indefinite term consisting of a minimum period of one year and a maximum period not to exceed the juvenile's twenty first birthday." The court further ordered appellant to undergo sex offender treatment during commitment. Last, the court ordered appellant to have no contact with the victim or his family until appellant turns 21 years old.

{¶5} In February 2016, ODYS notified the trial court that its release review panel had approved appellant for release on parole on or after April 10, 2016. As a result, the trial court classified appellant a Tier III sexual offender. That decision was affirmed in *In re T.M.*, 11th Dist. Geauga No. 2016-G-0067, 2017-Ohio-156.

{¶6} Notwithstanding the pendency of his prior appeal, appellant was released on parole on April 10, 2016. Nine months later, in December 2016, ODYS notified the

2

trial court that appellant had been approved for discharge from parole on January 6, 2017.

{¶7} Within three weeks of discharge, appellant moved the trial court to review/modify his classification as a Tier III juvenile sex offender. The state opposed, maintaining that although appellant was no longer on parole, his request was premature because he was still subject to the no-contact order.

{¶8} On February 23, 2017, the trial court heard oral arguments on whether a "review" hearing could be held prior to the termination of the no-contact order. Appellant's counsel argued that once discharged from parole, the trial court no longer has jurisdiction to enforce the no-contact order. The trial court rejected that argument, holding that its jurisdiction continues despite parole discharge. However, the trial court also stated that it would accept additional briefing whether the no-contact order should be vacated so that the "review" hearing could go forward.

{¶9} Appellant immediately moved the trial court to vacate the no-contact order, arguing that the order was void since its issuance because a juvenile court has no authority to impose such an order unless it is part of a community control sentence, citing *State v. Anderson*, 143 Ohio St.3d 173, 2015-Ohio-2089, ¶17.

{¶10} Without waiting for a response, the trial court denied appellant's motion to vacate ruling that a juvenile court has discretion to impose a no-contact order in conjunction with a commitment sentence.

{¶11} Appellant appeals both judgments. This court consolidated the appeals. Appellant raises one assignment of error:

{¶12} "The Geauga County Juvenile Court erred when it failed to vacate its no-

3

contact order in this case and when it denied T.M.'s right to an end-of-disposition hearing required under R.C. 2152.84, Fifth and Fourteenth Amendments to the U.S. Constitution, and Article I, Section 16, Ohio Constitution."

{¶13} In challenging the trial court's conclusion that he had not fulfilled all of the orders in the April 10, 2015 dispositional judgment, appellant asserts two arguments for review. First, he argues that the no-contact order is invalid because the trial court does not have the statutory authority to impose such a requirement as part of a commitment order. Second, he claims that by ordering his commitment to the Ohio Department of Youth Services, the court lost its authority to enforce a no-contact order.

{¶14} As to the validity of the no-contact order, appellant asserts that the Ohio Supreme Court's holding in *State v. Anderson*, supra, is controlling. In *Anderson*, the adult defendant was convicted of rape and kidnapping. In addition to imposing an aggregate prison term of 17 years, the trial court ordered the defendant to have no contact with the victim. On appeal, the defendant asserted that the trial court had no authority under the adult sentencing scheme to impose a no-contact order in conjunction with a prison term. The Ohio Supreme Court agreed.

{¶15} The *Anderson* court first emphasized that a trial court does not have inherent power to create a sentence; i.e., a trial court can impose only what is expressly authorized by statute. *Id.* at ¶10-12. Second, the *Anderson* court concluded that a no-contact order is a community control sanction. *Id.* at ¶17. Third, the court found the statutory scheme governing adult sentencing for prison terms and community control sanctions to be alternative remedies. *Id.* at ¶28. Therefore, since a no-contact order is a community control sanction, it cannot be imposed when the adult defendant has been

4

ordered to serve a prison term.

{¶16} The juvenile statutes, however, differ and sanction the no-contact order in conjunction with confinement.

{¶17} R.C. 2152.16 governs commitments to the youth services department for secure confinement. Division (A)(1)(c) states that if a child is found to have committed the crime of rape under R.C. 2907.02(A)(2), a juvenile court may commit the child to the legal custody of the department "for an indefinite term consisting of a minimum period of one to three years, * * * and a maximum period not to exceed the child's attainment of twenty-one years of age[.]" Division (A)(2) provides that when a juvenile court commits a juvenile to confinement, the court retains control over the commitment for the stated minimum period.

{¶18} R.C. 2152.19 sets forth additional dispositional orders a juvenile court may impose:

{¶19} "(A) If a child is adjudicated a delinquent child, the court may make any of the following orders of disposition, in addition to any other disposition authorized or required by this chapter:

{¶20} "* * *

{¶21} "(4) Place the child on community control under any sanctions, services, and conditions that the court prescribes. * * *"

{¶22} R.C. 2152.19(A)(8), a catchall provision, provides that a juvenile court can "[m]ake any further disposition that the court finds proper," except that it cannot place the child in a correctional institution or a community corrections facility where adults are held.

{¶23} In the second appealed judgment, the trial court concluded that it had the authority to impose a no-contact order either as a specific sanction under community control or in conjunction with an order of commitment to ODYS relying on R.C. 2152.19(A)(8). We agree.

{¶24} In *In re Caldwell*, 76 Ohio St.3d 156, 666 N.E.2d 1367 (1996), the Ohio Supreme Court concluded a juvenile court has the authority to impose consecutive terms of commitment upon a delinquent relying on the catchall provision. "[B]y using the word 'any' in [the provision], which the General Assembly was not required to do, it gave the trial judge discretion to take 'any' steps the judge believes necessary to fully and completely implement the rehabilitative disposition of a juvenile * * *." *Id.* at 159. The *Caldwell* court also stated that its broad interpretation of the catchall provision "is consistent with the underlying purposes and goals of the juvenile court system, *i.e.*, supervision, care and rehabilitation of the delinquent youth." *Id.* at 160. *See also, In re H.V.*, 138 Ohio St.3d 408, 2014-Ohio-812 7 N.E.3d 1173; *In re G.L.L.*, 11th Dist. Geauga Nos. 2014-G-3189 & 2014-G-3190, 2015-Ohio-3539, ¶55-57.

{¶25} Given *Caldwell*, the extent of a juvenile court's sentencing authority in a delinquency case is manifestly broader than in an adult criminal case. To this extent, the minimal limitation upon a juvenile court's authority under the catchall provision is that disposition cannot directly conflict with another statute governing juveniles. *See, e.g., In re Williams*, 4th Dist. Washington No. 05CA56, 2006-Ohio-4657. Appellant has not noted a conflicting statute.

{¶26} Moreover, given that a no-contact order serves the purposes and goals of the juvenile system, the trial court's order is sanctioned under the governing statutes

6

and, therefore, was not void ab initio.

{¶27} However, this leads to the question of whether the no-contact order was still enforceable when appellant filed his motion to review/modify his sex offender status in January 2017. After a juvenile court has committed a delinquent child to the custody of the youth services department, its continuing authority over the child is governed by two statutory provisions. The first statute is R.C. 2152.16(A)(2). As noted above, R.C. 2152.16(A)(1) delineates the length of commitment a juvenile court can impose for the commission of a felony offense, including rape. Division (A)(2) of the statute then provides:

{¶28} "In each case in which a court makes a disposition under this section, the court retains control over the commitment for the minimum period specified by the court in divisions (A)(1)(a) to (e) of this section. During the minimum period, the department of youth services shall not move the child to a nonsecure setting without the permission of the court that imposed the disposition."

{¶29} The extent of a juvenile court's control over a child following a commitment order is also addressed in R.C. 2152.22(A):

{¶30} "When a child is committed to the legal custody of the department of youth services under this chapter, the juvenile court relinquishes control with respect to the child so committed, except as provided in divisions (B), (C), (D), and (H) of this section or in sections R.C. 2152,82 to 2152.86 of the Revised Code. Subject to divisions (B), (C), and (D) of this section, sections 2151.353 and 2151.412 to 2151.421 of the Revised Code, sections 2152.82 to 252.86 of the Revised Code, and any other provision of law that specifies a different duration for a dispositional order, all other dispositional orders

7

made by the court under this chapter shall be temporary and shall continue for a period that is designated by the court in its order, until terminated or modified by the court or until the child attains twenty-one years of age.

{¶31} "The department shall not release the child from a department facility and as a result shall not discharge the child or order the child's release on supervised release prior to the expiration of the minimum period specified by the court in division (A)(1) of section 2152.16 of the Revised Code and any term of commitment imposed under section 2152.17 of the Revised Code or prior to the child's attainment of twenty-one years of age, except upon the order of a court pursuant to division (B), (C), or (D) of this section or in accordance with section 5139.54 of the Revised Code."

{¶32} Given the provisions in R.C. 2152.16(A)(2) and 2152.22(A), the extent of a juvenile court's authority over a child, i.e., its jurisdiction, is very limited once an order of commitment is issued. First, pursuant to R.C. 2152.16(A)(2), the court can only control the child's placement within the youth services system for the minimum period of the commitment. As noted above, the minimum period of appellant's commitment was one year. Second, pursuant to R.C. 2152.22(A), the type of orders the juvenile court can issue regarding a child is limited. Divisions (B), (C), and (D) of R.C. 2152.22 only permit the court to grant the child judicial release at various stages throughout the commitment period. For example, division (B) governs the granting of judicial release during the first half of the minimum period. Distinct from orders concerning judicial release, a juvenile court also has jurisdiction under R.C. 2152.22(H) to issue orders pertaining to the child's supervised release under the sole authority of the youth services department. These orders are limited to stating the terms of the release and determining whether those

terms have been subsequently violated. *See* R.C. 5139.51 and 5139.52. In addition, if the child was also classified as a juvenile offender registrant, the juvenile court retains the authority following commitment to issue orders regarding a child's petition to modify or terminate his sexual offender status. *See* R.C. 2152.82 et seq.

{¶33} None of the exceptions set forth in R.C. 2152.22(A) grant a juvenile court the general authority to enforce other pending orders in the case. Instead, the provision only allows for the issuance of new orders pertaining to three specific subjects: judicial release, supervised release granted by the youth services department, and modification or termination of the child's sexual offender status.

{¶34} As to the extent of the trial court's authority under R.C. 2152.16(A)(2), the ability to "control" the child's commitment would necessarily entail the authority to limit the persons with whom the child could communicate while in the secured facility. As a result, a no-contact order is enforceable under that provision. However, as previously noted, the authority granted under R.C. 2152.16(A)(2) can only be exercise during the minimum period of the child's commitment.

{¶35} The one-year minimum period of appellant's commitment ended in April 2016. Therefore, when appellant moved to review/modify his sex offender classification in January 2017, R.C. 2152.16(A)(2) no longer applied, and the trial court no longer had any authority to enforce its prior no-contact order.

{¶36} In turn, this means that when appellant's motion to review/modify came before the trial court for consideration in February 2017, all dispositional orders in the April 10, 2015 final judgment had either been satisfied or were no longer enforceable. Under these circumstances, the trial court was required to proceed on the motion and

9

conduct a hearing regarding appellant's continuing sex offender status. Accordingly, appellant's sole assignment has merit.

{¶37} The judgments of the Geauga County Court Common Pleas, Juvenile Division, are reversed, and the case is hereby remanded for further proceedings.


CYNTHIA WESTCOTT RICE, J.,

TIMOTHY P. CANNON, J.,

concur.